MILES FEINSTEIN, ESQ.
1135 CLIFTON AVENUE
CLIFTON, NEW JERSEY 07013
TEL: (973) 779-1124
FAX: (973) 779-9883
E-MAIL: MrFeinsteinEsq@aol.com
Attorney for Defendant
Giuseppe Giudice

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                               :
UNITED STATES OF AMERICA,      :        Criminal No. 13-495(ES)
                               :
   Plaintiff,                  :
                               :
v.                             :        NOTICE OF PRETRIAL MOTIONS
                               :        ON BEHALF OF THE DEFENDANT
GIUSEPPE GIUDICE,              :        GIUSEPPE GIUDICE
   a/k/a "Joe Giudice," and    :
TERESA GIUDICE,                :
                               :
   Defendants.                 :
_____:

TO: Jonathan W. Romankow, AUSA         Henry E. Klingeman, Esq.
    OFFICE OF THE UNITED               60 Park Place; Suite 1100
    STATES ATTORNEY                    Newark, New Jersey 07102
    970 Broad Street
    Newark, NJ 07102

DEAR COUNSEL:

    PLEASE TAKE NOTICE that on a date and time to be set by the
Court, the undersigned counsel for defendant Giuseppe Giudice
shall move before the Court for an Order:

    1. Severing the trial of defendant Giuseppe Giudice from
       Teresa Giudice due to unduly prejudicial joinder under
       Fed. R. Cr. P. 14 or at a minimum severing at least some
       of the counts with which he is charged;

    2. Severing Counts 1-13 and Counts 14-36 under Fed. R. Crim.
       P. 8(a);

- 1 -

3. Requiring a Bill of Particulars, including details of who the government alleges signed certain documents;

4. Dismissing the Indictment with prejudice as it creates impermissible "variances" by alleging a single conspiracy and offering multiple, independently operating conspiracies at trial in violation of <u>Kotteakos v. United States</u>, 328 U.S. 750 (1946);

5. Dismissing certain charges in Count 1 of the Superseding Indictment which were not brought within the applicable statute of limitations period;

6. Requiring the immediate production by the government of all <u>Brady</u> exculpatory and/or favorable information in its possession or under its control along with any and all <u>Giglio</u> impeachment materials;

7. Requiring the prosecution to disclose all discovery pursuant to Rule 3500 ("Jencks Act") material at least seventy-five days prior to the time the government expects the witnesses to testify;

8. Requiring the prosecution to provide access to the grand jury transcript in order to determine whether grand jury abuses led to the indictment against Mr. Giudice;

9. Requiring the prosecution to disclose any undisclosed discovery or certify that it is in full compliance with Rule 16;

10. Requiring the prosecution to preserve all rough notes, report drafts, and final reports prepared by any government agent or witness;

11. Requiring the prosecution to describe the general nature of any evidence of other crimes, wrongs or acts allegedly committed by defendant Giuseppe Giudice that it intends to introduce at trial, pursuant to Rule 404(b);

12. Requiring the prosecution to disclose all alleged co-conspirator statements and conducting a <u>James</u> hearing to determine their admissibility;

- 2 -

13.  Requiring a hearing to determine the audibility and admissibility of all tape recordings, including all "Real Housewives of New Jersey" takes and outtakes;

14.  Requiring the government to disclose relevant information concerning all informants;

15.  Requiring the government to indicate exactly what prior testimony given in bankruptcy proceedings will be used as it pertains to a particular defendant or both;

16.  Allowing the defendant Giuseppe Giudice permission to join in the motions of codefendant Teresa Giudice; and

17.  Allowing the filing of additional motions as they become appropriate.

PLEASE TAKE FURTHER NOTICE that the undersigned counsel respectfully requests oral argument.

PLEASE TAKE FURTHER NOTICE that in support of this motion the undersigned will rely on the accompanying Memorandum in Support of Pretrial Motions submitted herewith, as well as the requested oral argument.

MILES FEINSTEIN, ESQ.
Attorney for Defendant
Giuseppe Giudice

/s/ Miles Feinstein
MrFeinsteinEsq@aol.com

/s/ John Vincent Saykanic
JohnVincentEsq@aol.com

Dated: January 15, 2014

- 3 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | HON. ESTHER SALAS, U.S.D.J. |
| Plaintiff, | : | Criminal No. 13-495(ES) |
| v. | : | ORAL ARGUMENT REQUESTED |
| GIUSEPPE GIUDICE, | : | HEARING DATE: _____ |
| a/k/a "Joe Giudice," and | : | |
| TERESA GIUDICE, | : | |
| Defendants. | : | |

**DEFENDANT GIUSEPPE GIUDICE'S MEMORANDUM
OF LAW IN SUPPORT OF PRETRIAL MOTIONS**

MILES FEINSTEIN, ESQ.
1135 Clifton Avenue
Clifton, New Jersey 07013
TEL: (973) 779-1124
FAX: (973) 779-9883
E-MAIL: MrFeinsteinEsq@aol.com
Attorney for Defendant
Giuseppe Giudice

Miles Feinstein, Esq.
And John Vincent Saykanic, Esq.
On the Memorandum of Law

## TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . v

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY AND STATEMENT OF FACTS . . . . . . . . 4

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . 2

    POINT I

    THE TRIAL OF DEFENDANT GIUSEPPE GIUDICE SHOULD BE
    SEVERED FROM TERESA GIUDICE DUE TO UNDULY
    PREJUDICIAL JOINDER UNDER FED. R. CRIM. P. 8(B)
    AND FED. R. CRIM. P. 14 . . . . . . . . . . . . . 8

    POINT II

    COUNTS 1-13 (THE BANK AND MORTGAGE LOAN COUNTS)
    MUST BE SEVERED FROM COUNTS 14-36 (THE BANKRUPTCY
    FRAUD COUNTS) TO AVOID UNDUE CONFUSION AND PREJUDICE
    TO THE DEFENDANTS UNDER FED R. CRIM. P. 8(A) . . . . . 20

    POINT III

    THE GOVERNMENT MUST PROVIDE A COMPLETE
    BILL OF PARTICULARS PURSUANT TO RULE 7(F) . . . . . . . 25

    POINT IV

    THE INDICTMENT MUST BE DISMISSED WITH PREJUDICE
    AS IT VIOLATES THE PRINCIPLES OF KOTTEAKOS AND
    ALLEGES A SINGLE CONSPIRACY OF MULTIPLE CONSPIRACIES
    WITH AN IMPROPER "SPILLOVER" EFECT . . . . . . . . . 35

    POINT V

    THE COURT SHOULD DISMISS CERTAIN CHARGES IN
    COUNT I OF THE SUPERSEDING INDICTMENT WHICH
    WERE NOT BROUGHT WITHIN THE APPLICABLE
    STATUTE OF LIMITATIONS PERIOD . . . . . . . . . . . 40

i

POINT VI

THE PROSECUTION SHOULD BE ORDERED TO PRODUCE
IMMEDIATELY ALL BRADY AND GIGLIO MATERIALS . . . . . . . 45

    SUBPOINT A

    THE COURT SHOULD ORDER THE IMMEDIATE
    PRODUCTION OF BRADY MATERIAL . . . . . . . . . . 45

    SUBPOINT B

    THE COURT SHOULD ORDER THE IMMEDICATE
    PRODUCTION OF BRADY IMPEACHMENT AND
    GIGLIO/BAGLEY MATERIAL . . . . . . . . . . . . . 53

    SUBPOINT C

    THE COURT SHOULD INSTRUCT THE PROSECUTION
    TO FULFILL ITS DISCOVERY OBLIGATIONS FORTHWITH . . 56

POINT VII

THE GOVERNMENT SHOULD BE REQUIRED TO
DISCLOSE TO DEFENSE COUNSEL ALL DISCOVERY
PURSUANT TO RULE 3500 ("JENCKS ACT" MATERIAL)
OF THE FEDERAL RULES OF EVIDENCE AT LEAST
SEVENTY-FIVE DAYS PRIOR TO THE TIME THAT THE
GOVERNMENT EXPECTS THE WITNESS TO TESTIFY . . . . . . . 57

POINT VIII

THE DEFENDANT SHOULD BE GIVEN ACCESS TO
THE GRAND JURY TRANSCRIPTS IN ORDER TO
DETERMINE WHETHER GRAND JURY ABUSES LED TO
THE INDICTMENT AGAINST HIM AND FOR IMPEACHMENT
OF WITNESSES' TESTIMONY . . . . . . . . . . . . . . . . 59

POINT IX

THE COURT SHOULD DIRECT THE GOVERNMENT
TO DISCLOSE (PURSUANT TO RULE 16) ANY
UNDISCLOSED DISCOVERY OR CERTIFY THAT
IT IS IN FULL COMPLIANCE WITH RULE 16 . . . . . . . . . 62

POINT X

THE GOVERNMENT SHOULD BE COMPELLED TO
PRSERVE ALL ROUGH NOTES, REPORT DRAFTS,
AND FINAL REPORTS PREPARED BY ANY
GOVERNMENT AGENT OR WITNESS IN CONNECTION
WITH THE INVESTIGATION WHICH CULMINATED
IN THE INDICTMENT AGAINST THE DEFENDANT . . . . . . . .  63

POINT XI

THE COURT SHOULD ORDER THE PROSECUTION
TO PROVIDE IMMEDIATELY (OR AT LEAST 75
DAYS BEFORE TRIAL) THE GENERAL NATURE
OF ANY EVIDENCE OF OTHER CRIMES, WRONGS
OR ACTS THAT IT INTENDS TO INTRODUCE AT
TRIAL AGAINST DEFENDANT GIUSEPPE GIUDICE . . . . . . . .  65

POINT XII

ALL COCONSPIRATOR STATEMENTS
MUST BE DISCLOSED AND THE COURT
SHOULD CONDUCT A JAMES HEARING TO
DETERMINE THEIR ADMISSIBILITY . . . . . . . . . . . . .  67

POINT XIII

THE DEFENDANT REQUESTS A HEARING TO
DETERMINE THE AUDIBILITY AND ADMISSIBILITY
OF ALL TAPE AND VIDEO RECORDINGS IN THE
WITHIN CASE, INCLUDING ALL "REAL HOUSEWIVES
OF NEW JERSEY" TAKES AND OUTTAKES . . . . . . . . . . .  70

POINT XIV

THE GOVERNMENT MUST BE DIRECTED TO
DISCLOSE RELEVANT INFORMATION CONCERNING
ALL INFORMANTS AND WITNESSES . . . . . . . . . . . . . .  72

POINT XV

THE GOVERNMENT MUST INDICATE EXACTLY
WHAT PRIOR TESTIMONY GIVEN AT THE BANKRUPTCY
PROCEEDINGS WILL BE USED AS IT PERTAINS TO A
PARTICULAR DEFENDANT OR BOTH . . . . . . . . . . . . . .  74

<u>POINT XVI</u>

DEFENDANT GIUSEPPE GIUDICE JOINS IN
THE MOTIONS OF CODEFENDANT TERESA GIUDICE
TO THE EXTENT THEY DO NOT CONFLICT . . . . . . . . . . 75

<u>POINT XVII</u>

DEFENDANT REQUESTS LEAVE TO FILE ADDITIONAL
MOTIONS AS THEY BECOME APPROPRIATE . . . . . . . . . . 76

CONCLUSION . . . . . . . . . . . . . . . . . . . . . 77

CERTIFICATION OF SERVICE . . . . . . . . . . . . . . 78

<u>APPENDIX (defendant will move to file under seal)</u>

Letter from AUSA Romankow to Attorney Klingeman
    (dated August 7, 2013) . . . . . . . . . . . . . . Da1-Da3
Letter from Attorney Cerimele to AUSA Romankow
    (dated October 11, 2013) . . . . . . . . . . . . . Da4
Letter from AUSA Romankow to Attorney Cerimele
    (dated October 21, 2013) . . . . . . . . . . . . . Da5-Da6
Declaration of Giuseppe Giudice (dated January 10,
    2014) . . . . . . . . . . . . . . . . . . . . . . Da7-9
    Exhibits to Declaration:
        Exhibit A – Memorandum of Conversation (dated
        May 21, 2010) . . . . . . . . . . . . . . . . Da10-Da11
        Exhibit B – Excerpts of Giuseppe Giudice
        Deposition (dated April 30, 2010) . . . . . . Da12-15
        Exhibit C – Memorandum of Interview (dated
        February 4, 2013) . . . . . . . . . . . . . . Da16-17

iv

# TABLE OF AUTHORITIES

Page No.

CASES CITED

Brady v. Maryland,
  373 U.S. 83 (1963) . . . . . . . . . . . . . 16,45,47-50,53,55

Branzburg v. Hayes,
  408 U.S. 665 (1972) . . . . . . . . . . . . . . . . 59

Derrickson v. Del. County Dist. Attorney's Office,
  No. 04-1569, 2006 U.S. Dist. LEXIS 51476 (E.D.
  Pa. July 26, 2006) . . . . . . . . . . . . . . . 55

DirectTV, Inc. v. Leto,
  467 F.3d 842 (3d Cir. 2006) . . . . . . . . . . 11

Fletcher v. United States,
  158 F.2d 321 (D.C. Cir. 1946) . . . . . . . . . 73

Giglio v. United States,
  405 U.S. 150 (1972) . . . . . . . . . . . . . 45,48,53,55

Hollman v. Wilson,
  158 F.3d 177 (3d Cir. 1998) . . . . . . . . . . 47

In re Grand Jury,
  111 F.3d 1083 (3d Cir. 1997) . . . . . . . . . . 17

In re Maltifano,
  633 F.2d 276 (3d Cir. 1980) . . . . . . . . . . 17

Kotteakos v. United States,
  328 U.S. 750 (1946) . . . . . . . . . . . . 13,35-36,39,43

Kyles v. Whitley,
  514 U.S. 419, 115 S.Ct. 1555 (1995) . . . . . . . . . 45-46

Lambert v. Blackwell,
  387 F.3d 210 (3d Cir. 2004) . . . . . . . . . . 54

Napue v. Illinois,
  360 U.S. 264 (1959) . . . . . . . . . . . . . 53

v

Pennsylvania v. Ritchie,
    480 U.S. 39 (1987) . . . . . . . . . . 46

Rivera v. Pennsylvania,
    187 Fed. Appx. 240 (3d Cir. 2006) . . . . . . . . 56

Roviaro v. United States,
    33 U.S. 53 (1957) . . . . . . . . . . . 72

Russell v. United States,
    369 U.S. 749 (1962) . . . . . . . . . . 25

Strickler v. Greene,
    527 U.S. 263 (1999) . . . . . . . . . . 46

Toussie v. United States,
    397 U.S. 112 (1970) . . . . . . . . . . 41

Trammel v. United States,
    445 U.S. 40 (1980) . . . . . . . . . . . 17

United States v. Addonizio,
    451 F.2d 49 (3d Cir. 1971), cert. denied, 405 U.S.
    936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972) . . . . . . . 26

United States v. Agurs,
    427 U.S. 97 (1976) . . . . . . . . . . . 45

United States v. Ahmad,
    53 F.R.D. 194 (M.D.P.A. 1971) . . . . . . . . . 34

United States v. Ali,
    2005 WL 697482 (E.D.Pa. 2005) . . . . . . . . . 18

United States v. Ammar,
    174 F.2d 255 (3d Cir. 1983) . . . . . . . . . 67

United States v. Bagley,
    473 U.S. 667 (1985) . . . . . . . . . . 45

United States v. Banks,
    520 F.2d 627 (7th Cir. 1975) . . . . . . . . . 73

United States v. Barger,
    178 F.3d 844 (7th Cir. 1999) . . . . . . . . . 40

United States v. Barrentine,
  591 F.2d 1069 (5th Cir.), cert. denied, 444 U.S. 990,
  100 S.Ct. 521, 62 L.Ed.2d 419 (1979) . . . . . . . . . . 28

United States v. Bernardo,
  775 F.2d 238 (2d Cir. 1986) . . . . . . . . . . . . . . 59

United States v. Bledsoe,
  674 F.2d 647 (8th Cir. 1982), cert. denied, 459 U.S.
  1040 (1982) . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Bortnovsky,
  820 F.2d 572 (2d Cir. 1987) . . . . . . . . . . . . . . 27

United States v. Boscia,
  573 F.2d 827 (3d Cir. 1978) . . . . . . . . . . . 13-14

United States v. Calvert,
  523 F.2d 895 (8th Cir. 1975) . . . . . . . . . . . . 73

United States v. Camiel,
  689 F.2d 31 (3d Cir. 1982) . . . . . . . . . . . . . . 36

United States v. Chavis,
  296 F.3d 450 (6th Cir. 2002) . . . . . . . . . . . . 22

United States v. Continental Group, Inc.,
  603 F.2d 444 (3d Cir. 1979), cert. denied, 100 S.Ct.
  703 (1980) . . . . . . . . . . . . . . . . . . . . . . 69

United States v. Coppolla,
  788 F.2d 303 (5th Cir. 1986) . . . . . . . . . . . 9,21

United States v. Curry,
  977 F.2d 1042, 1049 (7th Cir. 1992), cert. denied,
  507 U.S. 947, 113 S.Ct. 1357, 122 L.Ed. 737 (1993) . . . . 21

United States v. Davidoff,
  845 F.2d 1151 (2d Cir. 1988) . . . . . . . . . . . 27-28

United States v. Davis,
  297 F.3d 173 (2005) . . . . . . . . . . . . . . . . . 13

United States v. Dedeaux,
   2013 WL 5935173 (D.N.J. 2013) . . . . . . . . . . . .   21

United States v. Dionisio,
   410 U.S. 1 (1973) . . . . . . . . . . . . . . . . . . 59

United States v. Dobson,
   CRIM. 02-616-06, 2003 WL 22427984 (E.D. Pa.
   Aug. 18, 2003) . . . . . . . . . . . . . . . . . 16-17

United States v. Edwards,
   264 Fed. Appx. 139 (3d Cir. 2008) . . . . . . . . . . 54

United States v. Eufrasio,
   935 F.2d 553 (3d Cir. 1991) . . . . . . . . . 10,22,24

United States v. Evangelista,
   813 F.Supp. 294 (D.N.J. 1993) . . . . . . . . . . . . 65

United States v. Gambino,
   926 F.2d 1355 (3d Cir.), cert. denied, 111 S.Ct.
   2800 (1991) . . . . . . . . . . . . . . . . . . . . . 69

United States v. Giampa,
   904 F.Supp. 235 (D.N.J. 1995) . . . . . . . . . 9-10,21

United States v. Gibbs,
   739 F.2d 838 (3d Cir. 1984) . . . . . . . . . . . . . 67

United States v. Gonzalez,
   918 F.2d 1129 (3d Cir. 1990) . . . . . . . . . . . . 13

United States v. Gorecki,
   813 F.2d 40 (3d Cir. 1987) . . . . . . . . . . . . . 21

United States v. Henthorn,
   931 F.2d 29 (9th Cir. 1991) . . . . . . . . . . . .62

United States v. Higgs,
   713 F.2d 39 (3d Cir. 1983) . . . . . . . . . . 47-48,53

United States v. Hill,
   976 F.2d 132 (3d Cir. 1992) . . . . . . . . . . . . . 45

United States v. Hubbard,
  474 F.Supp. 64 (D.D.C. 1979) . . . . . . . . . . . . . 22,34

United States v. Irizzary,
  341 F.3d 273 (3d Cir. 2003), cert. denied, 540 U.S.
  1140 (2004) . . . . . . . . . . . . . . . . . . . 10-11,22

United States v. James,
  590 F.2d 575 (5th Cir.), cert. denied, 442 U.S.
  917 (1979) . . . . . . . . . . . . . . . . . . . . . 67-68

United States v. Jiles,
  658 F.2d 194 (3d Cir. 1981) . . . . . . . . . . . . . . 72

United States v. Jiminez,
  No. 05-4098, 2008 U.S. App. LEXIS 715 (3d Cir. 2006) . . . 11

United States v. Kemp,
  2004 U.S. Dist. LEXIS 24189 (D.N.J. 2004) . . . . . . . 22
United States v. Knoh,
  379 F.2d 427 (2d Cir. 1967) . . . . . . . . . . . . . . 70

United States v. Lane,
  474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) . . . 36,39

United States v. Legget,
  162 F.3d 237 (3d Cir. 1998) . . . . . . . . . . . . . . 17

United States v. Lore,
  430 F.3d 190 (3d Cir. 2005) . . . . . . . . . . . . . . 24

United States v. Mannino,
  180 F.Supp. 1182 (S.D.N.Y. 1979) . . . . . . . . . . . 34

United States v. McGlory,
  968 F.2d 309 (3d Cir. 1992), cert. denied, 113
  S.Ct. 415 (1993) . . . . . . . . . . . . . . . . . . . 68

United States v. McKeever,
  168 F.Supp. 426 (S.D.N.Y. 1958) . . . . . . . . . . . . 71

United States v. Murphy,
  569 F.2d 771 (3d Cir. 1978) . . . . . . . . . . . . . . 57

ix

United States v. Oliva,
    46 F.3d 320 (3d Cir. 1995) . . . . . . . . . . . . . . 40

United States v. Padilla,
    982 F.2d 110 (3d Cir. 1992) . . . . . . . . . . . . . 36

United States v. Partin,
    493 F.2d 750 (5th Cir. 1974) . . . . . . . . . . . . . 73

United States v. Pellot,
    43 Fed. Appx. 473 (3d Cir. 2002) . . . . . . . . . . 48

United States v. Perdomo,
    929 F.2d 967 (3d Cir. 1991) . . . . . . . . . . . . . 47

United States v. Perez,
    280 F.3d 318 (3d Cir. 2002) . . . . . . . . . . . . . 35

United States v. Pharis,
    298 F.3d 228 (3d Cir. 2002) . . . . . . . . . . . . . 40

United States v. Plaskett,
    No. 2007-60, 2008 U.S. Dist. LEXIS 62944 (D.V.I.
    August 13, 2008) . . . . . . . . . . . . . . . . . . 48

United States v. Pollack,
    534 F.2d 964 (D.C. Cir. 1976) . . . . . . . . . . . . 48

United States v. Rankin,
    870 F.2d 109 (3d Cir. 1989) . . . . . . . . . . . . . 25

United States v. Rosa,
    891 F.2d 1063 (3d Cir. 1989) . . . . . . . . . . . . 26

United States v. Simmons,
    679 F.2d 1042 . . . . . . . . . . . . . . . . . . . . 12

United States v. Somers,
    496 F.2d 723 (3d Cir. 1974), cert. denied,
    95 S.Ct. 57 (1974) . . . . . . . . . . . . . . . . 10,21

United States v. Starks,
    515 F.2d 112 (3d Cir. 1975) . . . . . . . . . . . . 56,70

x

United States v. Starusko,
   729 F.2d 256 (3d Cir. 1984) . . . . . . . . . . . 46,53

United States v. Tucker,
   552 F.2d 202 (7th Cir. 1977) . . . . . . . . . . . 72

United States v. Urena,
   27 F.2d 1487 (10th Cir. 1994) . . . . . . . . . . . 68

United States v. Urgan,
   404 F.3d 754 (3d Cir. 2005) . . . . . . . . . . . 28

United States v. Velasquez,
   772 F.2d 1348 (7th Cir. 1990) . . . . . . . . . . . 11

United States v. Wecht,
   No. 06-0026, 2007 U.S. Dist. LEXIS 59870 (W.D.Pa.
   August 1, 2007) . . . . . . . . . . . . . . . . 47,55

Will v. United States,
   389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967) . . . . . 26

Zafiro v. United States,
   506 U.S. 534 (1993) . . . . . . . . . . . . . . 12,24

## STATUTES CITED

18 U.S.C. § 2 . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 152(2) . . . . . . . . . . . . . . . . 4

18 U.S.C. § 152(3) . . . . . . . . . . . . . . . . 4

18 U.S.C. § 157(3) . . . . . . . . . . . . . . . . 4

18 U.S.C. § 1014 . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 1341 . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 3500(a) . . . . . . . . . . . . . . . . 57

18 U.S.C § 1343 . . . . . . . . . . . . . . . . . 4

xi

18 U.S.C. § 1344 . . . . . . . . . . . . . . . . . . 4

26 U.S.C. § 7203 . . . . . . . . . . . . . . . . . . 4

## RULES CITED

FED. R. CRIM. P. 7(f) . . . . . . . . . . . . . . . 25

FED. R. CRIM. P. 8(a) . . . . . . . . . . . . . . 20-22

FED. R. CRIM. P. 8(b) . . . . . . . . . . . . . 8,10,20

FED. R. CRIM. P. 14(a) . . . . . . . . . . . . . . . 9

FED. R. EVID. 401 . . . . . . . . . . . . . . . . . 61

FED. R. EVID. 404(b) . . . . . . . . . . . . . . 65,73

FED. R. EVID. 613 . . . . . . . . . . . . . . . . . 73

FED. R. EVID. 801(d)(2)(E) . . . . . . . . . . . . . 62

## OTHER AUTHORITIES

U.S. Const. Amend. 5 . . . . . . . . . . . . . . . . 59

1 C. Wright, Federal Practice and Procedure, § 144
   (2d ed. 1982) . . . . . . . . . . . . . . . . . . 22

## PRELIMINARY STATEMENT

On July 29, 2013, the United States Government (the "government") obtained an indictment against Giuseppe Giudice, a/k/a "Joe Giudice" and Teresa Giudice (collectively "the Giudices").  On November 18, 2013, a superseding indictment was obtained against the Giudices on two new charges.  The forty-one count superseding indictment stems from allegations that between 2001 and 2011, the Giudices engaged in mail and wire fraud, bank fraud, and bankruptcy fraud.  It also alleges that Mr. Giudice failed to make tax returns during the calendar years 2005-2009.

Mr. Giudice respectfully seeks the following relief by way of the current motion: (1) a severance of the defendants and counts; (2) a bill of particulars; (3) dismissal of certain time-barred charges in Count I; (4) disclosure of all alleged coconspirator statements; (5) immediate production of Brady and Giglio materials; and (6) all other relief sought herein.

Severance of the defendants is required (as argued in co-defendant's brief), to allow Teresa to invoke her constitutional right to testify on her own behalf.  It is also necessary to allow Teresa to invoke the marital privilege against testifying against her spouse.  Without an order severing the trials, she is placed in the position of choosing to testify on her own behalf and against her husband, or not testifying at all.

1

Similarly, severance of Counts 1-13 and Counts 14-36 will be required to prevent undue confusion, thereby prejudicing the defendants.  Specifically, Counts 1-13 involve allegations of wire, mail, and bank fraud—that the Giudices knowingly and fraudulently made false statements to financial and non-financial institution lenders.  In contrast, Counts 14-36 involve allegations of bankruptcy fraud, wherein the Giudices are alleged to have concealed or misrepresented property while applying for bankruptcy.  Counts 1-13 and Counts 14-36 do not overlap factually, are charged under different statutory provisions, and are temporally distinct.

Additionally, a bill of particulars is necessary to apprise Mr. Giudice of the allegations against him, adequately prepare his defense, and avoid any unfair surprises at trial.  The forty-one count superseding indictment is replete with amorphous allegations that the Giudices and "others" submitted "documents" to "entities" causing the basis for the charges against them. Similarly, to prepare for trial, the Giudices are also entitled to any <u>Brady</u> and <u>Giglio</u> material, and coconspirator statements, which have yet to be produced.

Finally, Mr. Giudice also respectfully moves the Court to dismiss certain charges in Count I of the superseding indictment.  Since the applicable statute of limitations for

mail and wire fraud involving non-financial institutions is five years, all allegedly fraudulent loan applications made between 2001 and 2005 are time-barred.

<u>PROCEDURAL HISTORY AND STATEMENT OF FACTS</u>[1]

The Giudices have been charged in a forty-one count superseding indictment.  The counts of the superseding indictment are as follows:  Count 1 – Conspiracy to Commit Mail Fraud and Wire Fraud in contravention of 18 U.S.C. § 1341 and 1343; Count 2-7 – Bank Fraud in contravention of 18 U.S.C. § 1344 and Section 2; Counts 8-13—Loan Application Fraud in contravention of 18 U.S.C. § 1014 and Section 2; Count 14—Bankruptcy Fraud in contravention of 18 U.S.C. § 157(3) and Section 2; Counts 15-20—Bankruptcy Fraud (Concealment) in contravention of 18 U.S.C. § 152(1) and 2; Counts 21-26—Bankruptcy Fraud (False Oaths) in contravention of 18 U.S.C. § 152(2) and 2; and Counts 27-36—Bankruptcy Fraud (False Declarations) in contravention of 18 U.S.C. § 152(3) and 2.

Mr. Giudice was also charged in Counts 37-41 for failing to make tax returns in contravention of 26 U.S.C. § 7203 and 18 U.S.C. § 2.

A. COUNTS 1-13: THE LOAN APPLICATION COUNTS

The substance of Counts 1-13 alleges that the Giudices submitted false and fraudulent mortgage and other loan

---

[1] Mr. Giudice respectfully combines the "Procedural History" and "Statement of Facts" portion of this brief.  The allegations of the Indictment, which are disputed, are set forth herein for purposes of the motion.

4

applications to lenders, such as Park Avenue Bank, Wachovia, Sterling Bank, Community Bank of Bergen County, Washington Mutual, HomeComings Financial, Eastern American Mortgage, and Alterna Mortgage. This alleged conduct took place between 2001 and 2008. At that time, Teresa was allegedly either unemployed or worked intermittently for one of Joe's companies.

Specifically, as detailed fully in Count 1 of the superseding indictment, the Giudices are alleged to have "knowingly and intentionally conspire[d] and agree[d] with each other and others to devise a scheme and artifice to defraud the Lenders and to obtain money from the Lenders by means of materially false and fraudulent pretenses, representations, and promises." The government contends that the Giudices "would create, or cause to be created, and then submit or cause to be submitted to the Lenders false and fraudulent federal personal income tax returns, IRS Forms W-2, paystubs, and other documents that purported to provide evidence of defendants' employment and salaries." The following loan or mortgage applications are alleged to have been falsified:

    i.   HomeComings: The government contends that in September 2001, the Giudices submitted an application to HomeComings which allegedly falsely stated that Teresa was employed as an executive assistant with one of Joe's company's earning $3,750/week, when, in fact,

she was unemployed. The superseding indictment alleged that the Giudices submitted to HomeComings false and fraudulent Forms W-2 and paystubs in support of the loan application.

ii.   Eastern American: The government contends that in June 2004, the Giudices submitted a loan application to Eastern American which falsely stated that Teresa was a self-employed owner of one of Mr. Giudice's companies (G & G Stucco) earning $14,750/month, when, in fact, she was unemployed.

iii.  Alterna: The government contends that in March 2005, the Giudices submitted a loan application to Alterna which falsely stated that Teresa was a self-employed owner of one of Mr. Giudice's companies (G & G Stucco) earning $12,100/month, when, in fact, she was unemployed.

iv.   Washington Mutual: The government contends that in July 2005, the Giudices submitted a loan application to Washington Mutual which falsely stated that Teresa was a realtor with Cresthill Realty earning $15,000/month, when, in fact, she was unemployed.

v.    Park Avenue: The government contends that in November 2005, the Giudices submitted a loan application to Park Avenue which incorporated false and fraudulent tax returns and W-2 Forms.

vi.   Wachovia: The government contends that in December 2006, the Giudices submitted a loan application to Wachovia which incorporated false and fraudulent tax returns.

vii.  Wachovia: The government contends that in February 2007, the Giudices submitted a loan application to Wachovia which incorporated false and fraudulent tax returns and W-2 Forms.

viii. Sterling: The government contends that in February 2008, the Giudices submitted a loan application to Sterling which incorporated false and fraudulent tax returns and W-2 Forms.

6

    ix.   CBBC: The government contends that in July 2008, the Giudices submitted a loan application to CBBC which falsely stated that defendants had a private bank account containing $500,000.  The superseding indictment alleged that the Giudices submitted to CBBC false and fraudulent tax returns and W-2 Forms in support of the loan application.

Mr. Giudice has denied involvement in the alleged misrepresentations in Counts 1-13.

B. COUNTS 14-36: THE BANKRUPTCY PETITION COUNTS

In October 2009, the Giudices filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the proceeding entitled In Re Teresa and Giuseppe Giudice, Case No. 09-39032.  The bankruptcy petition was later amended in December 2009, and again in January 2010.  It was withdrawn on December 15, 2011.  Counts 14-36 allege that the Giudices "intentionally omitted and concealed material facts, and provided false and misleading information" by failing to fully disclose assets, liabilities, income from prior years, and any anticipated income.

Mr. Giudice has denied all allegations contained in Counts 14-36.

<u>LEGAL ARGUMENT</u>

<u>POINT I</u>

THE TRIAL OF DEFENDANT GIUSEPPE GIUDICE
SHOULD BE SEVERED FROM TERESA GIUDICE
DUE TO UNDULY PREJUDICIAL JOINDER UNDER FED.
R. CRIM. P. 8(B) AND FED. R. CRIM. P. 14

Mr. Giudice respectfully requests that his trial be severed from that of Teresa's trial to avoid undue prejudice and confusion.

The Federal Rules of Criminal Procedure 8(b) provide:

> The indictment or information <u>may</u> charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count. Fed. R. Crim. P. 8(b). (Emphasis supplied).

As stated above, Rule 8(b) precludes joinder of defendants unless they "are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed R. Crim. P. 8(b). In order to constitute "part of the 'same series of acts or transactions,' [the] acts must be part of one overall scheme about which all joined defendants knew and in which they all

8

participated." <u>United States v. Bledsoe</u>, 674 F.2d 647, 656 (8th Cir. 1982), cert. denied, 459 U.S. 1040 (1982); <u>United States v. Giampa</u>, 904 F. Supp. 235, 263 (D.N.J. 1995). "'[W]hen there is no substantial identity of facts or participants between the offenses, there is no 'series' of acts in the Rule 8(b) sense.'" <u>Giampa</u>, 904 F. Supp. at 263 (quoting <u>United States v. Coppola</u>, 788 F.2d 303, 306 (5th Cir. 1986)). In other words, the requirements of the Rule are "not met by a mere similarity of offenses committed by two or more defendants." <u>Id</u>. There must be "'some <u>common activity involving all of the defendants which embraces all the charged offenses</u> even though every defendant need not have participated in or be charged with each offense.'" <u>Id</u>. (quoting <u>Bledsoe</u>, 674 F.2d at 656) (emphasis supplied).

Federal Rule of Criminal Procedure 14(a) provides:

> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires. Fed. R. Crim. P. 14.

Rule 8(b) prescribes a "less permissive standard" for joinder than Rule 8(a) because it requires "a transactional nexus []between the offenses or defendants to be joined,"

9

regardless of whether the offenses share the same or similar character. United States v. Eufrasio, 935 F.2d 553, 570 n. 20 (3rd Cir. 1991). See also United States v. Giampa, 904 F.Supp. 235, 263 (D.N.J. 1995) ("unlike the requirements of Rule 8(a), the requirements of Rule 8(b) are not met by a mere similarity of offenses committed by two or more defendants."). Rule 8(b)'s "less permissive standard" applies to all joinder challenges in multiple-defendant cases, even where a defendant in such a case "is actually challenging the joinder of allegedly unrelated offenses" in which that defendant is charged. United States v. Irizarry, 341 F.3d 271, 287 (3rd Cir. 2003) (emphasis in original), cert. denied, 124 S.Ct. 1128 (2004). See also United States v. Somers, 496 F.2d 723, 729 n. 8 (3rd Cir.) ("Rule 8(a) [] applies only to prosecutions involving a single defendant. If more than one defendant is indicted, the test for joinder of counts and defendants is merged in Rule 8(b)."), cert. denied, 95 S.Ct. 56 (1974); Wright, Federal Practice and Procedure (199) § 144, at 44 ("It had been firmly established in the case law that the propriety of joinder in cases where there are multiple defendants must be tested by Rule 8(b) alone and that Rule 8(a) has no application."). Because rule 8(b)'s stricter joinder standard governs all multiple-defendant cases, "the government may not tack the two subsections [Rule 8(a) and Rule 8(b)]

10

together and in one indictment charge different persons with committing offenses of 'similar character.'" <u>United States v. Velasquez</u>, 772 <u>F</u>.2d 1348, 1352 (7th Cir. 1990) ("It is not enough [under Rule 8(b)] that the crimes were of 'similar character' [because] [t]hat would allow mass trials," which "would not present any advantages in the search for truth – there is no 'whole' to see in perspective – while at the same time presenting the dangers of prejudice involved in joint trials.").

As noted above, the propriety of joinder in a multi-defendant case is determined under Rule 8(b). <u>United States v. Irizarry</u>, 341 <u>F</u>.3d 273, 287 (3d Cir. 2003). Rule 8(b) is less permissive than Rule 8(a), which governs joinder of offenses against a single defendant (the impropriety of the joinder of offenses under Rule 8(a) is discussed in <u>Point II</u>, <u>infra</u>).

Under Rule 8(b), it is not sufficient that defendants are involved in offenses of the same or similar character; instead, "there must exist a transaction, or in the same series of acts or transactions." <u>United States v. Jiminez</u>, No. 05-4098, 2008 U.S. App. LEXIS 715, at *43 (3d Cir. Jan. 2008) (quoting Fed. R. Crim. P. 8(b)). <u>See</u>, <u>e.g.</u>, <u>DirecTV, Inc. v. Leto</u>, 467 F.3d 842, 844 (3d Cir. 2006) (providing that "district judges have discretion to remedy misjoinders either by severing claims or dismissing them without prejudice").

While it is undeniable that judicial economy favors a joint trial where defendants are jointly indicted (United States v. Simmons, 679 F.2d 1042, 1051 (3d Cir. 1982), nonetheless, Rule 14 recognizes that joinder, even when proper under Rule 8, may prejudice a defendant or the government. Zafiro v. United States, 506 U.S. 534, 538 (1993). Therefore, Rule 14 provides that if a joint trial "appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

When defendants have been properly joined under Rule 8, a court should grant severance under Rule 14 "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, supra, 506 U.S. at 539. Nonetheless, "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." Id. at 541. However, a court should grant severance under Fed. R. Crim. P. 14 "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, supra, 506 U.S. at 539.

12

As explained in United States v. Boscia, 573 F.2d 827, 833 (3d Cir. 1978), "no defendant should ever be deprived of a fair trial because it is easier or more economical for the government to try several defendants in one trial rather than in protracted multiple trials." Indeed, the "goal of the judicial process is not to decide cases as quickly and as inexpensively as possible." Id.

Courts have found that substantial prejudice exists where 1) evidence of a codefendant's wrongdoing could lead a jury to conclude that a defendant was guilty due to markedly different degrees of culpability; and 2) where the testimony of a defendant (either movant or codefendant) will be prejudicial. See Kotteakos v. United States, 328 U.S. 750, 774-775 (1946); see also United States v. Davis, 297 F.3d 173, 182-183 (2005).

As explained in Boscia, the Third Circuit balances the following factors in considering whether severance is proper based on the latter:

1. The likelihood of codefendants testifying;

2. The degree to which such testimony would be exculpatory;

3. The degree to which the identifying codefendants would be impeached; and

4. Judicial economy. United States v. Boscia, 573 F.2d 827 (3d Cir. 1978); See also United States v. Gonzalez, 918 F.2d 1129, 1137 (3d 1990).

13

The first _Boscia_ factor requires a showing that Mr. Giudice would testify in support of Teresa at her severed trial. Here, Mr. Giudice has submitted a declaration which states that he will invoke his Fifth Amendment privilege against self-incrimination in his trial. However, should the trials be severed, Mr. Giudice has affirmed his willingness to testify as to Teresa's involvement in the alleged criminal activity. He would be unable to do so in a joint trial wherein his Fifth Amendment rights are invoked.

As to the second _Boscia_ factor, the testimony Mr. Giudice will provide is clearly exculpatory. As Mr. Giudice's declaration states, he will testify that:

1. Teresa had no knowledge of any misrepresentation on loan applications, mortgage applications, or lines of credit;

2. Teresa was not aware that various properties were acquired in her name;

3. Teresa was not aware that various businesses were owned in her name;

4. Mr. Giudice signed Teresa's name on numerous occasions without her knowledge and authorization;

5. Mr. Giudice's business partner, Joe Mastropole, signed Teresa's name on numerous occasions without her knowledge and authorization;

14

6. Mr. Giudice's attorney, Fred Roughgarden,
   signed Teresa's name on numerous occasions
   without her knowledge and authorization;

7. Other individuals, including bank
   representatives, were aware that Teresa had
   not signed various documents, including,
   loan applications, mortgage applications,
   lines of credit, or HUD-1s. (Giuseppe
   Giudice Declaration; Da[2] 7 to 9).

The information Mr. Giudice seeks to provide in his
testimony is clearly exculpatory, and other witnesses will seek
to corroborate the veracity of said testimony. Indeed, in
responding to counsel's request for exculpatory material
pursuant to Brady v. Maryland, 373 U.S. (1963), the government
has stated (in a letter from AUSA Romankow to Teresa's counsel
(dated October 21, 2013; Da5 to 6):

> . . . [A]ttorney Frederick Roughgarden has
> advised the Government that in some
> instances Teresa Giudice did not sign
> various real estate closing documents such
> as HUD-1 forms, and that Teresa Giudice was
> not present at every real estate transaction
> that was closed in her name. Mr.
> Roughgarden stated that . . . closing
> documents . . . were signed in Teresa
> Giudice's name by her husband Giuseppe
> Giudice, and . . . [other documents] were
> signed in Teresa Giudice's name by Mr.
> Roughgarden as attorney for Teresa Giudice.
> In some instances, Mr. Roughgarden falsely
> notarized Teresa Giudice's signature despite
> the fact that Giuseppe Giudice had actually
> signed her name. (Da5-6).

---

[2] "Da" denotes defendant's Appendix.

15

As the government correctly observed, Mr. Roughgarden's conduct and anticipated testimony is exculpatory.

Unquestionably, Mr. Giudice's conduct and anticipated testimony would be just as imperative to Teresa's defense. If the codefendants are tried jointly, and Mr. Giudice invokes his Fifth Amendment right, Teresa will be prejudiced.

The third and fourth Boscia factors require the Court to consider the degree to which the testifying codefendant could be impeached, and the need for judicial economy. Naturally, a joint trial in this matter would be economical. Also as apparent, Mr. Giudice's testimony has the potential for impeachment because it is favorable to his wife, and the familial relationship alone suggests bias. Nevertheless, when balancing these factors with the need for the evidence, which would almost certainly exculpate Teresa, the Court should grant the instant motion. "[N]o defendant should be deprived of a fair trial simply because it is more convenient for the government to try several defendants jointly." United States v. Dobson, CRIM. 02-616-06, 2003 WL 22427984 at 3 (E.D. Pa. Aug. 18, 2003). Accordingly, for the foregoing reasons and authorities cited, the trial of Mr. Giudice must be severed from the trial of Teresa Giudice.

In addition to the above stated reason for separate trials,

16

as the co-defendants in this case are husband and wife there are confidential communications along with the marital privilege. Co-defendant Teresa Giudice might testify for the defendant Mr. Giudice at a severed trial and he will not testify in his own behalf.

As stated, it is well established that the right to testify on one's own behalf at a criminal trial is a fundamental constitutional right. See United States v. Leggett, 162 F.3d 237, 245 (3d Cir. 1998). In addition, the privilege afforded a witness not to testify adversely against his or her spouse is absolute, see In re Grand Jury, 111 F.3d 1083, 1086 (3d Cir. 1997), even "where the spouses have been partners in crime." In re Malfitano, 633 F.2d 276 278 (3d Cir.1980). See also Trammel v. United States, 445 U.S. 40, 53 (1980).

A Third Circuit court was faced with an identical issue in United States v. Dobson, CRIM. 02-616-06, 2003 WL 22427984 (E.D. Pa. Aug. 18, 2003). In Dobson, a husband and wife were indicted for wire and mail fraud. The husband was placed in the position of choosing whether to testify on his own behalf to attempt to exonerate himself, but which may incriminate his wife; or not testify at all.

As a result, the Dobson court held that when such a conflict of rights occurs, a district court should resolve the

17

problem by severing the trials of the spouses.   Specifically, the court found that severance of the husband and wife's trial is "justified to protect [the husband's] two fundamental rights: the first, to testify on his own behalf and the second, his right not to testify against his wife. [He] will be prevented from the protection of both rights if he has to choose between them. Id. at 2.

More recently, in United States v. Ali, 2005 WL 697482 (E.D.Pa. 2005), a defendant and her husband were charged in approximately thirty counts of a superseding indictment with violations of RICO, mail fraud, wire fraud, and tax evasion. 2005 WL 697482.  The defendant moved to sever the trial from her husband, asserting that she wished to testify on her own behalf at trial, but that her testimony would inculpate her husband. Id.  The Court held:

> [I]f Defendant were tried alongside her husband, she would be forced to choose between two basic, fundamental rights. Requiring her to so compromise a specific trial right would be manifestly unfair. In the interest of justice, the appropriate remedy is to sever the trials of Defendant and her husband. Id.

As the courts in Dobson and Ali correctly held, if Teresa chose to testify as to her innocence, it may inculpate her husband.  Thus, she is placed in the position of choosing to

18

testify on her own behalf, or not testifying at all.  This is improper, and warrants severance of the trial.  Additionally, should the Court proceed with a joint trial, Mr. Giudice will likely invoke his Fifth Amendment constitutional right and forego testifying, despite likely exculpatory testimony that he and others, not Teresa, signed various loan documents.  If the trials were severed, Mr. Giudice could testify in Teresa's defense.  This scenario fits squarely within the considerations set forth by the Third Circuit.

In addition, if the government utilizes any testimony of co-defendant Teresa Giudice during the bankruptcy proceeding this will unduly prejudice the defendant Giuseppe Giudice.

Accordingly, severance of the Giudice trials is critical to avoid undue prejudice.  For the foregoing reasons and authorities cited above, the Giudice trial must be severed.

19

## POINT II

### COUNTS 1-13 (THE BANK AND MORTGAGE LOAN COUNTS) MUST BE SEVERED FROM COUNTS 14-36 (THE BANKRUPTCY FRAUD COUNTS) TO AVOID UNDUE CONFUSION AND PREJUDICE TO THE DEFENDANTS UNDER FED R. CRIM. P. 8(A)

Mr. Giudice incorporates by reference the arguments and authorities in Point I, supra, and submits that Counts 1-13 must be severed from Counts 14-36 to avoid confusion and undue prejudice.

Mr. Giudice respectfully requests that the Court sever Counts 1-13 and Counts 14-36 which are factually and fundamentally distinct. The former concerns loan and mortgage applications submitted from 2001-2008. The latter concerns a bankruptcy petition which was submitted years later. The two sets of counts are based on different legal theories, different factual bases, and different time periods.

Federal Rule of Criminal Procedure 8 governs the joinder of offenses, while Rule 14 describes the relief from prejudicial joinder. In contrast to Rule 8(b), Rule 8(a) also permits joinder of offenses having the "same or similar character":

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

20

Rule 8(a) permits joinder of offenses, only where the offenses (1) are of the same or similar character, (2) are based on the same act or transaction; or (3) are connected with or constitute parts or a common scheme or plan. Fed. R. Crim. P. 8. See also <u>United States v. Dedeaux</u>, 2013 WL 5935173.  Multiple offenses must be performed "pursuant to a common scheme or plan." <u>United States v. Somers</u>, 496 F.2d 723, 730 (3d Cir. 1974); <u>United States v. Giampa</u>, 904 F. Supp. 235, 263 (D.N.J. 1995) (citing <u>United States v. Curry</u>, 977 F.2d 1042, 1049 (7th Cir. 1992), <u>cert</u>. <u>denied</u>, 507 U.S. 947, 113 S.Ct. 1357, 122 L.Ed. 737 (1993).

In the case at bar, the Giudices did not engage in a "common scheme or plan" sufficient to warrant joinder of counts under Rule 8.  To be part of a "common scheme or plan" the charges must be "sufficiently connected temporally or logically to support the conclusion that the two crimes are part of the same…plan." <u>United States v. Gorecki</u> 813 F.2d 40, 42 (3rd Cir. 1987).  Thus, "where there is no substantial identity of facts or participants between the offenses, there is no series of acts." <u>Giampa</u>, 904 F. Supp. at 263 (citing <u>United States v. Coppolla</u>, 788 F.2d 303, 306 (5th Cir. 1986).  Furthermore, some courts also require that a "commonality of proof" exist, in addition to a showing of a "logical relationship" between

21

charges, prior to joinder. See e.g. United States v. Kemp, 2004
U.S. Dist. LEXIS 24189, *9 (D.N.J.2004) (citing United States v.
Hubbard, 474 F.Supp. 64, 87 (D.D.C. 1979).

Finally, in deciding a Rule 8(a) motion, the trial court
must only look to the indictment to determine whether the counts
are properly joined. United States v. Irizarry, 341 F.3d 273,
287, n.4 (3rd Cir. 2003), cert. denied, 540 U.S. 1140 (2004);
see also United States v. Chavis, 296 F.3d 450, 456-57 (6th Cir.
2002) ("Whether joinder was proper under Rule 8(a) is determined
by the allegation on the face of the indictment."). If the face
of the indictment cannot justify joinder under Rule 8(a), then
the counts cannot be tried together as a matter of law. United
States v. Eufrasio, 935 F.2d 553, 567 (3rd Cir. 1991) citing 1
C. Wright, Federal Practice and Procedure, § 144 (2d ed. 1982).

In this case, there is no overlap in the factual
allegations or the evidence in Counts 1-13 and Counts 14-36.
Counts 1-13 allege that the Giudices obtained loans and
mortgages by making false representations on loan applications
and various tax documents. Essentially, the government is
asserting that the Giudices inflated their income and assets in
order to procure various loans. On the contrary, Counts 14-36
allege that the Giudices made misrepresentations and omissions
when filing for bankruptcy. Essentially, the government is

22

alleging the opposite for these counts – that the Giudices *deflated* their income and worth in attempting to file for bankruptcy.

Aside from a blanket allegation that "the Giudices make misrepresentations" the government cannot realistically justify its attempt to try Counts 1-13 and Counts 14-36 in the same trial.  Each set of counts refer to completely unrelated events during completely different time periods.  While the bankruptcy counts involve a relatively short period of time – approximately 25 months – the allegations in Counts 1-13 span nearly a decade, dating back to 2001.

Additionally, the evidence and witnesses will show that these sets of counts are not at all part of a "common scheme or plan" to defraud.  Specifically, the witnesses in Counts 1-13 will be real estate lawyers, realtors, accountants, mortgage representatives and bank employees.  The evidence will be primarily loan and mortgage applications, powers of attorney, HUD-1 forms, and various business certificates.  On the other hand, for Counts 14-36, the witnesses will be bankruptcy attorneys, literary agents, and various financial advisors.  The evidence will be bankruptcy petitions, schedules and transcripts, in addition to financial statements from the Giudices' banks and businesses.  Any comparison between the two

23

sets of counts is illusory. Consequently, due to the risk of juror confusion and unfair prejudice, the two sets of counts must be severed.

The court may also sever Counts 1-13 from Counts 14-36 pursuant to Rule 14(a), which offers relief from a Prejudicial Joinder. As stated, _supra_, Rule 14(a) provides: if the "joinder of offenses…for trial appears to prejudice a defendant…the court may order separate trials of counts . . . or provide any other relief that justice requires."

Unlike Rule 8 in which severance is mandatory, relief under Rule 14(a) is discretionary. _Eufrasio_, 935 F.2d at 568. Thus, a district judge can grant a severance pursuant to Rule 14(a) "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." _Zafiro v. United States_, 506 U.S. 534, 539 (1993). _See also United States v. Lore_, 430 F.3d 190, 204-5 (3rd Cir. 2005).

In the case at bar, Counts 1-13 should be severed from Counts 14-36 pursuant to Rule 14(a). For reasons similar to those made concerning Rule 8, joinder of these counts would unduly confuse the jury attempting to dissect entirely unrelated charges. Accordingly, it is respectfully submitted that the Court sever Counts 1-13 from Counts 14-36.

<u>POINT III</u>

THE GOVERNMENT MUST PROVIDE A COMPLETE
BILL OF PARTICULARS PURSUANT TO RULE 7(F)

The Sixth Amendment to the U.S. Constitution guarantees the accused in a criminal case "the right . . . to be informed of the nature and cause of the accusation." Accordingly, it requires that an indictment (1) "contain . . . the elements of the offense to be charged"; (2) "sufficiently apprise…the defendant of what he must be prepared to meet"; and (3) provide a clear and accurate record "in case any other proceedings are taken against [the defendants] for a similar offense." <u>Russell v. United States</u>, 369 U.S. 749, 763-62 (1962); <i>see also</i> <u>United States v. Rankin</u>, 870 F.2d 109, 112 (3d Cir. 1989).

Rule 7(f) of the Federal Rules of Criminal Procedure specifically permits the Court to order that a Bill of Particulars be provided:

> The Court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f) provides a method for defendants to seek clarification on the nature of the charges against them. It

25

provides, in relevant part, that "the court may direct the filing of a bill of particulars." Rule 7(f) was amended in 1966 "to encourage a more liberal attitude by the courts toward bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir. 1989) (quoting Fed. R. Crim. P. 7 Advisory Committee's Note to 1966 amendment). The rule is to be "liberally interpreted" to enable the accused to meet the charges against him.

A motion for a bill of particulars is appropriate where a defendant requires clarification in order to prepare a defense. Will v. United States, 389 U.S. 90, 99, 88 S. Ct. 269, 19 L.Ed.2d 305 (1967). Bills of particular should be granted "whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." Rosa, 891 F.2d at 1066. See also United States v. Addonizio, 451 F.2d 49, 63-64 (3d Cir. 1971) (purpose of bill of particulars is "to inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense."), cert. denied, 405 U.S. 936, 92 S. Ct. 949, 30 L. Ed. 2d 812 (1972).

26

In both <u>United States v. Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987), and <u>United States v. Davidoff</u>, 845 F.2d 1151, 1154 (2d Cir. 1988), the Court of Appeals reversed convictions on the basis that it was error to deny a bill of particulars where the information sought was critical to the defendant's preparation of a defense and where the bill would have prevented the government's elusive approach to the prosecution of the case. There is a similar critical need for the limited information requested here. It is virtually impossible to defend against the indictment as framed.

The fact that the government has made available to defense counsel the voluminous documentary discovery accumulated in connection with this case does not obviate the need for a bill of particulars. Mr. Giudice's motion does not seek to determine "how" the government intends to prove its case, but rather "what" the government intends to prove. Indeed, it is the very extensive nature of the discovery provided that gives rise to Mr. Giudice's need for a more specific statement of the charges. <u>See</u> <u>Bortnovsky</u>, 820 F.2d at 575 ("The government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified...."); <u>Davidoff</u>, 845 F.2d at 1155 (<u>Jencks</u> and discovery material may not be automatically relied

27

on by the government as an adequate substitute for a bill of
particulars).  For example, the government should be compelled
to disclose the name of each unindicted coconspirator,
regardless of whether the government plans to use him or her as
a witness at trial. United States v. Barrentine, 591 F.2d 1069
(5th Cir.), cert. denied, 444 U.S. 990, 100 S. Ct. 521, 62 L. Ed.
2d 419 (1979).  The superseding indictment uses vague and
amorphous phrases, such as the Giudices "did knowingly and
intentionally conspire and agree with each other and others to
devise a scheme . . ."  The government's reliance on these
phrases warrants granting Mr. Giudice's request for a bill of
particulars. See United States v. Davidoff, 845 F.2d 1151 (2d
Cir. 1988).  In United States v. Urgan, 404 F.3d 754, 772 (3d
Cir. 2005), the Court stated: "The purpose of a bill of
particulars is to inform the defendant of the nature of the
charges brought against him, to adequately prepare his defense,
to avoid surprise during the trial and to protect him against a
second prosecution for an inadequately described offense."
Urban, 404 F.3d at 771-72 (internal citations omitted). See
United States v. Addonizio, 451 F.2d 49, 63-64 (3d Cir.), cert.
denied, 405 U.S. 936 (1972).

      It must be emphasized that the pretrial discovery in this
case, while voluminous to the tune of tens of thousands of pages

28

of documents, does not provide the clarification requested by the defense as set forth in this motion.  These are not questions that can be answered by looking at the discovery materials because they touch squarely on the prosecutorial theory of this case.  The only way to give the defendant the needed clarification, as contemplated by the above-cited authorities, is to issue a bill of particulars.

As a result, Mr. Giudice respectfully moves that the government be ordered to state the following:

### Count One (Conspiracy to Commit Mail and Wire Fraud)

1. In paragraph 2, the government states that the conspiracy took place "in the District of New Jersey *and elsewhere.*" Identify where else the alleged conspiracy occurred.

2. In paragraph 2, the government states that the Giudices "did knowingly and intentionally conspire and agree with each other and others to devise a scheme and artifice to defraud the Lenders and to obtain money from the Lenders . . ."  Identify all other coconspirators.

3. In paragraph 6(a), identify which "documents" were caused to be sent via the U.S. Mail or private or commercial carriers to HomeComings.

4. In paragraph 6(a), identify which other "entities" and "individuals" were sent allegedly false documents.

29

5. In paragraph 6(a), identify the "fraudulent forms W-2 and paystubs" that are allegedly false.

6. In paragraph 6(b), identify which "documents" were caused to be sent via the U.S. Mail or private or commercial carriers to Eastern American.

7. In paragraph 6(b), identify which other "entities" and "individuals involved with the closing of the loan" were sent allegedly false documents.

8. In paragraph 6(c), identify which "documents" were caused to be sent via the U.S. Mail or private or commercial carriers to Alterna.

9. In paragraph 6(c), identify which other "entities" and "individuals involved with the closing of the loan" were sent allegedly false documents.

10.    In paragraph 6(d), identify which "documents" were caused to be sent via the U.S. Mail or private or commercial carriers to WaMu.

11.    In paragraph 6(d), identify which other "entities" and "individuals involved with the closing of the loan" were sent allegedly false documents.

12.    In paragraph 6(e) identify with specificity any false or fraudulent tax document.

13.    In paragraph 6(e), identify which "documents" were

30

caused to be sent via the U.S. Mail or private or commercial carriers to Park Avenue.

14.   In paragraph 6(e), identify which other "entities" and "individuals involved with the closing of the loan" were sent allegedly false documents.

15.   In paragraph 6(f)-6(g) identify with specificity any false or fraudulent tax document.

16.   In paragraph 6(f)-6(g), identify which "documents" were caused to be sent via the U.S. Mail or private or commercial carriers to Wachovia.

17.   In paragraph 6(f)-6(g), identify which other "entities" and "individuals involved with the closing of the loan" were sent allegedly false documents.

18.   In paragraph 6(i), identify which "documents" were caused to be sent via the U.S. Mail or private or commercial carriers to CBBC.

19.   In paragraph 6(i), identify which other "entities" and "individuals involved with the closing of the loan" were sent allegedly false documents.

<u>Counts Two through Seven (Bank Fraud)</u>

1. In paragraph 2, identify, with specificity, any "materially false or fraudulent pretenses."

31

2. In paragraph 2, identify, with specificity, any "materially false or fraudulent . . . representation."

3. In paragraph 2, identify, with specificity, any "materially false or fraudulent . . . promises."

### Counts Eight through Thirteen (Loan Application Fraud)

1. In paragraph 2, identify, with specificity, any alleged false "statements."

2.  In paragraph 2, identify, with specificity, any alleged false "reports."

### Count Fourteen (Bankruptcy Fraud)

1. In paragraph 8(n), identify from what "various sources" Teresa allegedly received income.

2. In paragraph 11, identify what "other income" Defendants allegedly intentionally concealed.

3. In paragraph 11, identify what "true income" Defendants allegedly intentionally concealed.

4. In paragraph 11, identify what "anticipated increase in income" Defendants allegedly intentionally concealed.

### Counts 27 through 36 (Bankruptcy Fraud-False Declarations)

1. In paragraph 2, identify which false declarations are attributable to Mr. Giudice.

32

2. In paragraph 2 (count 28), identify why the "summary of schedules and schedules" are not true and correct.

3. In paragraph 2 (count 29), identify why the answers and attachments to the Statement of Financial Affairs are not true and correct.

4. In paragraph 2 (count 30), identify why the Statement of Current Monthly Income and Means-Test Calculation are not true and correct.

5. In paragraph 2 (count 31), identify why the "summary of schedules and schedules" are not true and correct.

6. In paragraph 2 (count 32), identify why the answers and attachments to the Statement of Financial Affairs are not true and correct.

7. In paragraph 2 (count 33), identify why the Statement of Current Monthly Income and Means-Test Calculation are not true and correct.

8. In paragraph 2 (count 34), identify why the answers and attachments to the Statement of Financial Affairs are not true and correct.

9. In paragraph 2 (count 35), identify why the "summary of schedules and schedules" are not true and correct.

10.    In paragraph 2 (count 36), identify why the answers and attachments to the Statement of Financial Affairs are

33

not true and correct.

Finally, in the case at bar, the government should be required to provide to the defendants who allegedly signed each document relevant to the case.  This is the only way that Mr. Giudice can have notice as to what he is alleged to have done wrong.  He should be provided not only with the names of who signed each document, but provided with the places where the wrongs occurred, and the names of the persons who allegedly participated with him, if any. See, e.g. United States v. Mannino, 180 F.Supp. 1182 (S.D.N.Y. 1979) (identity of co-conspirators); United States v. Hubbard, 474 F.Supp. 61 D.D.C. 1979) (identity of co-conspirator); United States v. Ahmad, 53 F.R.D. 194 (M.D.P.A. 1971) (identification of conspiratorial acts).

For the foregoing reasons and authorities cited, Mr. Giudice respectfully submits that the government must file a complete bill of particulars as to the above-stated requests.

34

<u>POINT IV</u>

THE INDICTMENT MUST BE DISMISSED
WITH PREJUDICE AS IT VIOLATES
THE PRINCIPLES OF <u>KOTTEAKOS</u> AND
ALLEGES A SINGLE CONSPIRACY OF
MULTIPLE CONSPIRACIES WITH AN
IMPROPER "SPILLOVER" EFECT

Defendant incorporates by reference the arguments and authorities in <u>Points I</u> and <u>II</u> and submits that the Indictment against the defendant must be dismissed due to improper "spillover." The prosecution is not permitted to allege a single conspiracy in an indictment and then offer evidence of multiple, independently operating conspiracies at trial. <u>Kotteakos v. United States</u>, 328 <u>U.S.</u> 750, 765, 66 <u>S.Ct.</u> 1239, 90 <u>L.Ed.</u> 1557 (1946) (holding that where the indictment charged one single conspiracy among the defendants, there was a fatal variance between the evidence and the indictment, because the evidence proved multiple, separate conspiracies, and the defendant was prejudiced by the variance); <u>see also</u> <u>United States v. Perez</u>, 280 <u>F</u>.3d 318, 345 (3d Cir. 2002); THIRD CIRCUIT MODEL JURY INSTRUCTION, Conspiracy (18 U.S.C. § 371 comments to 6.18.371H (updated Sept. 2007) recognizing that "[w]here a single conspiracy is alleged in the indictment, there may be a <u>fatal variance</u> if the evidence at trial proves only the existence of multiple, separate and independent conspiracies").

35

Such a variance between the pleadings and the proofs betrays a misjoinder of defendants and carries the possibility that an individual who is not involved in the larger scheme will nevertheless be convicted thereof. Kotteakos, 328 U.S. at 765-74, 66 S.Ct. 1239, cited in United States v. Lane, 474 U.S. 438, 446-47, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986).

A variance will prove fatal to conviction only if it causes substantial prejudice to the defendant. United States v. Padilla, 982 F.2d 110, 114-16 (3d Cir. 1992). This prejudice most often arises by the "spillover" effect of evidence of one defendant's guilt to another defendant who was not involved in the same conspiracy. E.g., United States v. Camiel, 689 F.2d 31, 37 (3d Cir. 1982); see also Kotteakos, 328 U.S. at 774, 66 S.Ct. 1239 (warning of "[t]he dangers of transference of guilt from one to another across the line separating conspiracies").

In Giudice, the government has clearly pled a single conspiracy when, in fact, at least nine distinct conspiracies exist—to wit, each of the bank/mortgage loan alleged frauds. The thirty-four (34) page, forty-one (41) counts superseding indictment pleads at a minimum, nine distinct conspiracies and then attempts to link all of those separate conspiracies. Cf. Kotteakos, 328 U.S. at 773 ("We do not think that either Congress . . . or this Court . . . intended to authorize the

36

Government to string together, for common trial, eight or more separate and distinct crimes, conspiracies related in kind though they might be, when the only nexus among them lies in the fact that one man participate in all.")

The following are the separate conspiracies in <u>Giudice</u>:

FIRST ALLEGED CONSPIRACY

1) Count 1 - Conspiracy to commit mail and wire fraud – Mr. Giudice and Teresa (September 2001 through September 2008).

SECOND ALLEGED CONSPIRACY

2) In September 2001, Mr. Giudice and Teresa prepared a $121,500 loan application with HomeComings Financial Network, Inc. (a non-financial institutional lender) that falsely stated that she was an Executive Assistant employed by Modern Era Investment Corp. with a monthly salary of $3,750 for four years.  Teresa received the $121.500 mortgage from HomeComings in December 21, 2001.

THIRD ALLEGED CONSPIRACY

3) In June 2004, Mr. Giudice and Teresa submitted a $20,200 loan application to Eastern American Mortgage Company (a non-financial institution lender) falsely stating that Teresa was a self-employed owner of G&G Stucco with a monthly salary of $14,750 and was so employed for seven years.  Teresa received the $20,200 mortgage.

FOURTH ALLEGED CONSPIRACY

4) In March 2005, Mr. Giudice and Teresa submitted two loan applications for a $141,550 mortgage from Alterna Mortgage Company (a non-financial institution lender) for

$141,550, falsely stating Teresa was the self-employed owner of G&G Stucco for six years.  Teresa received the $141,550 mortgage.

### FIFTH ALLEGED CONSPIRACY

5) In July 2005, Mr. Giudice and Teresa prepared a loan application for $361,250 to Washington Mutual Bank falsely stating Teresa was a Realtor with Cresthill Realty with a monthly salary of $15,000.  Teresa received a mortgage loan for $361,250.

### SIXTH ALLEGED CONSPIRACY

6) In November 2005, Mr. Giudice and Teresa prepared a construction loan application for $800,000 with Park Avenue Bank with fraudulent tax returns and fraudulent W-2 forms.  In January 2006 both Giuseppe and Teresa received a construction loan for $800,000.

### SEVENTH ALLEGED CONSPIRACY

7) In December 2006, Mr. Giudice (alone) applied for a home equity line of credit with Wachovia (now Wells Fargo) Bank with a false and fraudulent tax return (created by Mr. Giudice and Teresa).  Mr. Giudice withdrew approximately $251,360 from December 2006 through February 2009.

### EIGHTH ALLEGED CONSPIRACY

8) In February 2007, Mr. Giudice applied for a $170,252 loan from Wachovia.  Giuseppe and Teresa created fraudulent tax returns and fraudulent W-2 forms, and on February 15, 2007, Wachovia approved a home equity line of credit to Mr. Giudice from which he withdrew approximately $170,252 in February 2007.

## NINTH ALLEGED CONSPIRACY

9) In February 2008, Mr. Giudice and Teresa applied for a
$1,700,000 loan from Sterling Bank with "false and
fraudulent supporting documentation." On March 14, 2008,
Sterling issued a construction loan to Mr. Giudice and
Teresa for $1,700,000.

## TENTH ALLEGED CONSPIRACY

10) In July 2008, Mr. Giudice and Teresa applied for a
loan from Community Bank of Bergen County (CBBS) for
$1,720,000 based on the "false and fraudulent tax returns
and Forms W-2" (with the loan application falsely stating
that defendants had a private bank account containing
$500,000). On September 12, 2009, Mr. Giudice and Teresa
received a mortgage loan for $1,720,000.

In short, a simple review of the indictment reveals, quite
vividly, that the government has unquestionably pled multiple
conspiracies as one single, large conspiracy. Substantial
prejudice will undoubtedly arise in light of the spillover
effect that will ensue. See, e.g., United States v. Lane, 474
U.S. 438, 446-47 (1986) (recognizing that such a variance
between the pleadings and the proofs betrays a misjoinder of
defendants and carries the possibility of an individual who is
not involved in the larger scheme nevertheless being convicted
thereof. Accordingly, the indictment must be severed to avoid
the reversible error that will result if these parties are
permitted to stand trial together in unconnected, multiple,
unrelated counts. See Kotteakos, 328 U.S. at 775-77.

<u>POINT V</u>

THE COURT SHOULD DISMISS CERTAIN CHARGES IN
COUNT I OF THE SUPERSEDING INDICTMENT WHICH
WERE NOT BROUGHT WITHIN THE APPLICABLE
STATUTE OF LIMITATIONS PERIOD

This Court should dismiss any charge in Count I of the superseding indictment which relates to non-financial institutions. The statute of limitations for mail and wire fraud requires that indictments be "found" within five years of the commission of the offenses. 18 U.S.C. § 3282(a). "An indictment is found when it is returned by a grand jury and filed." <u>United States v. Oliva</u>, 46 F.3d 320, 324 (3d Cir. 1995).

The statute begins to run for mail fraud when a defendant "places, deposits, causes to be deposited, takes, or receives mail, or knowingly causes mail to be delivered, as part of the execution of a scheme to defraud," <u>United States v. Pharis</u>, 298 F.3d 228, 234 n. 3 (3d Cir. 2002). Specifically, for purposes of mail fraud and wire fraud, the five-year statute of limitations begins to run from the date of mailing of the fraudulent information. <u>United States v. Barger</u>, 178 F.3d 844, 847 (7th Cir. 1999). Each mailing constitutes a separate offense. <u>Id.</u> at 847. However, mail fraud is not an offense listed as a "continuing offense" whose statute of limitations begins at the end of a continuous course of criminal conduct.

40

See <u>Toussie v. United States</u>, 397 U.S. 112, 134-35 (1970).

While a five-year limitations period ordinarily applies to mail and wire crimes, a ten-year limitations period will apply "if the offense affects a financial institution." 18 U.S.C. § 3293(2). In this case, the government has admitted that the alleged conspiracy charged in Count I involved both financial institutions, whose deposits were insured by the Federal Deposit Insurance Corporations ("FDIC") and "non-financial" institutions. Accordingly, it should not be permitted to package numerous unrelated conspiracies together in an apparent effort to avoid expiration of the applicable statute of limitations period.

Since the initial indictment in this matter was presented to the grand jury and returned on July 28, 2013, the indictment could therefore only incorporate transmittals or mailings to "non-financial" institutions that occurred on or after July 28, 2008. However, as the superseding indictment makes abundantly clear, the alleged mail and/or wire transfers to HomeComings, Eastern American, and Alterna (all non-financial institutions) all took place long before July 28, 2008. Specifically, the loan applications which the government alleges to be fraudulent were transmitted in:

- September 2001 (non-financial institution);

41

- June 2004 (non-financial institution);

- March 2005 (non-financial institution).

The remaining "financial institution" mail/wire transactions were alleged to have taken place on:

- July 2005;

- November 2005;

- December 2006;

- February 2007;

- February 2008; and

- July 2008 (July 23, 2008).


Since the statute of limitations period for each and every "non-financial institution" loan application expired long before July 28, 2013, certain charges in Count I must be dismissed as time-barred.

Seemingly, the government is attempting to join two entirely unrelated conspiracies (and possibly several unrelated conspiracies) in an apparent attempt to save the statute of limitations period.  As argued in Point IV, supra, incorporated by reference herein, the prosecution is not permitted to allege a single conspiracy in an indictment and then offer evidence of multiple, independently operating conspiracies at trial.

42

<u>Kotteakos v. United States</u>, 328 U.S. 750, 765 (1946).

Indeed, the evidence has shown that the loan applications which cause the basis for the indictment took place intermittently over a span of eight years. Several of these loan applications were allegedly made to non-financial institutions, but this type of conduct ceased in March 2005. At that point, an entirely unrelated conspiracy is alleged to have taken place and continued until July 2008. However, it would be impossible to join these two conspiracies in one count. The fines for financial versus non-financial institution mail/wire fraud are different. The penalties are different. The law to be applied is different; and as stated, the statute of limitations period is different.

In addition, each and every allegedly fraudulent loan application will prove different. The evidence has shown that Teresa was not involved in many of the applications, and her name was signed by various individuals without her consent. The co-conspirators involved were different. The properties were different. The banks and mortgage companies were different. The attorneys were different. The accountants were different. The mortgage brokers and settlement agents were different.

Attempting to try these conspiracies as one will result in likely confusion to the jury and clear prejudice to the

43

defendants.  Accordingly, the Court should sever the
conspiracies involving non-financial institutions, which are now
time-barred.

POINT VI

THE PROSECUTION SHOULD BE ORDERED
TO PRODUCE IMMEDIATELY ALL BRADY
AND GIGLIO MATERIALS

SUBPOINT A

THE COURT SHOULD ORDER THE IMMEDIATE
PRODUCTION OF BRADY MATERIALS

The Due Process Clause of the Fifth Amendment to the United States Constitution requires that a prosecutor disclose exculpatory information to the defendant.  The United States Supreme Court has established a long line of cases, beginning with Brady v. Maryland, 373 U.S. 83, 87 (1963), the principle that the prosecution in a criminal proceeding is constitutionally required to disclose to a criminal defendant all evidence in its possession that is "favorable to the accused." See Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 1565-67 (1995) (the government has the duty "to learn of any favorable evidence known to the others acting on the government's behalf in the case"); United States v. Bagley, 473 U.S. 667, 682 (1985); United States v. Agurs, 427 U.S. 97 (1976); Giglio v. United States, 405 U.S. 150 (1972). See also United States v. Hill, 976 F.2d 132, 134-35 (3d Cir. 1992) ("Materials that must be disclosed are those that go [to] the heart of the defendant's guilt or innocence and materials that

45

might affect the jury's judgment of the credibility of a crucial prosecution witness."). The underlying purpose of the Brady doctrine is "to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations." Kyles, 115 S.Ct. at 1568. Thus, the government's duty to preserve and disclose Brady materials -- including exculpatory statements in the government's possession -- continues through sentencing, Kyles, 115 S.Ct. at 1565; Pennsylvania v. Ritchie, 480 U.S. 39, 60 (1987) (government's duty under Brady is on-going), and its failure to fulfill this duty violates due process, "irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. Brady disclosures hold a particular weight in the present matter in light of the multiple conspiracies alleged by the Government.

A prosecutor's Brady obligations may, therefore, be summarized as a constitutionally based legal duty to take affirmative steps to provide the defendant with all available exculpatory information. United States v. Starusko, 729 F.2d 256, 260 (3d Cir. 1984). See also Strickler v. Greene, 527 U.S. 263, 282 (1999) (noting that a federal prosecutor's "special status" as the representative of a sovereign whose goal is the fair administration of justice results in a "broad duty of

46

disclosure"); <u>Hollman v. Wilson</u>, 158 F.3d 177, 181 (3d Cir. 1998) ("[W]e . . . have imposed upon the prosecution a duty to search accessible files to find requested exculpatory material"); <u>United States v. Wecht</u>, No. 06-0026, 2007 U.S. Dist. LEXIS 59870, at *9 (W.D.Pa. Aug. 15, 2007) ("A prosecutor now must disclose exculpatory evidence even in the absence of a request for such information by the defense") citing <u>United States v. Perdomo</u>, 929 F.2d 967, 970 (3d Cir. 1991). In sum, Brady obligations are essential to ensuring that a defendant's right to a fair trial is vindicated.

The Third Circuit has a "longstanding policy of encouraging early production" of <u>Brady</u> and <u>Giglio</u> materials (<u>United States v. Starusko</u>, 729 F.2d 256, 261 (3d Cir. 1984)), in order to protect a defendant's constitutional right to receive such materials "in time for [their] effective use at trial." <u>United States v. Higgs</u>, 713 F.2d 39, 44 (3d Cir. 1983). Indeed, due process considerations require the government to disclose evidence favorable to the accused or detrimental to the government's case. <u>Brady v. Maryland</u>, 373 <u>U.S.</u> 83 (1963).

The Due Process Clause guarantees that Mr. Giudice receive <u>Brady</u> material "in time for its effective use at trial." <u>Starusko</u>, 729 F.2d 256, 262 (3d Cir. 1984), quoting <u>United States v. Higgs</u>, 713 F.2d 39 (3d Cir. 1983). <u>See also United</u>

47

States v. Pellot, 43 Fed. Appx. 473, 475 (3d Cir. 2002) ("We have . . . criticized prosecution delays in producing Brady material and advised government attorneys that such conduct is not in accordance with the high standard of professional conduct to which they should indeed, must adhere."); United States v. Pollack, 534 F.2d 964, 973 (D.C. Cir. 1976) ("Disclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case."); United States v. Plaskett, No. 2007-60, 2008 U.S. Dist. LEXIS 62944, at *15 (D.V.I. Aug. 13, 2008) ("Brady material must be presented to a defendant prior to trial.")  That inquiry turns on "what information has been requested and how that information will be used by" the defendant. Higgs, 713 F.2d at 44.  Ultimately, district courts have the power to dictate the timing of Brady material in order "to ensure the effective administration of the criminal justice system." Higgs, 713 F.2d at 44 n.6.

While the government has provided and made available extensive discovery to date, it is apparent after extensive review of this material that the government has failed to meet its obligations under Brady v. Maryland, 373 U.S. 83, 87 (1963) and Giglio v. United States, 405 U.S. 150 (1972).

In the case sub judice, on numerous occasions, the

48

government has written:

> The Government recognizes its obligations
> under <u>Brady v. Maryland</u> . . . and its
> progeny. To date, the Government is unaware
> of any <u>Brady</u> Material regarding your client,
> but will provide timely disclosure if any
> such material comes to light. <u>See</u> letter
> from AUSA Romankow to Mr. Klingeman dated
> August 7, 2013; Da2).

However, upon review of pertinent discovery, the attorneys for co-defendant Teresa Giudice challenged the government's failure to disclose <u>Brady</u> material in an October 11, 2013 correspondence, which demanded, in part:

> . . . immediate disclosure of any and all
> <u>Brady</u> material, including, *but not limited
> to:* 1) any statements by codefendants and/or
> witnesses that Teresa Giudice did not have
> knowledge of real estate purchases, loan
> applications, and bankruptcy proceedings; 2)
> any other statements by codefendants and/or
> witnesses that Teresa Giudice did not sign
> loan applications, HUD-1 statements, or
> other documents relevant to the Government's
> prosecution of this case; 3) any admissions
> (verbal or otherwise) by codefendants and/or
> witnesses; and 4) any agreements with
> witnesses not to prosecute and/or offer
> leniency in exchange for the witnesses'
> testimony. (Da4).

After this request, and for the first time, the government admitted that Mr. Giudice's attorney, Fred Roughgarden, admitted that he and Mr. Giudice signed Teresa Giudice's name, and that he also falsely notarized Teresa Giudice's signature. <u>See</u> Exhibit D. As the government correctly recognized, this

information is exculpatory and worthy of disclosure.

However, as counsel digs deeper into the discovery made available by the prosecution, it has become abundantly clear the government continues to withhold <u>Brady</u> material. An admission by a codefendant is exculpatory, probative, and worthy of disclosure. Nonetheless, the government has failed to refer the defense to the following exculpatory evidence within its possession:

a) Memorandum of Conversation, May 21, 2010 ("G. Giudice stated that T. Giudice had no involvement in the purchase and sale of the properties for profit. She didn't know what was going on."). <u>See</u> Exhibit A of Mr. Giudice Declaration; Da10.

b) Memorandum of Interview, February 4, 2013 ("Teresa had a perfect FICO score, so it made it easier to put loans in her name . . . Roughgarden never questioned the loan/closing documents . . . . Roughgarden would notarize documents where [I] signed Teresa's signature. <u>See</u> Exhibit C of Declaration; Da10.

c) Deposition of Giuseppe Giudice, April 30, 2010, 66:25-67:20, 96:5-96:11. <u>See</u> Exhibit B of Declaration; 12-15. Joe Giudice's deposition testimony states as follows:

Q: When the house was purchased in your wife's name was she present at the closing?

JG: No.

Q: But it was purchased in her name?

JG: Yes.

Q:   Who signed on her behalf?

JG:  I don't remember if it was me or my ex-partner.  I don't remember.

Q:   Was your wife aware that the property was purchased in her name?

JG:  Probably no.

Q:   Do you recall who signed on behalf of your wife at the closing?

JG:  No . . .

Q:   If you signed on behalf of your wife would you sign your name or her name?

JG:  I would sign her name.  66:25-67:20; Da12 to 13.

In reference to the acquisition of a different property, the deposition transcript further provides:

Q:   Do you know if your wife signed documents or you did?

JG:  No, probably not.

Q:   Sorry.

JG:  No, I don't think my wife signed anything.

Q:   If you signed on her behalf did you sign your name or did you sign her name?

JG:  I would probably sign her name if her name was there.  See Exhibit C of Declaration; (96-5 to 11; Da14).

The government indicted Teresa Giudice for fraud.  The

51

above statements, reports, and memorandums make unequivocally clear that Teresa was not involved in said conduct. It is <u>Brady</u> material and should have been produced. The issue remains, however, what *other* <u>Brady</u> material is being withheld.

The Court should order the immediate production of any other witness statements or otherwise exculpatory evidence. Additionally, this Circuit employs a "longstanding policy of encouraging early production" of <u>Giglio</u> materials, <u>United States v. Starusko</u>, 729 F.2d., 256, 261 (3d Cir. 1984), in order to protect a defendant's constitutional right to receive such materials "in time for [their] effective use at trial." <u>United States v. Higgs</u>, 713 F.2d 39, 44 (3d Cir. 1983). Given the breadth of the charges and the extensive number of non-indicted coconspirators, the Court should also direct the prosecution to produce all <u>Giglio</u> materials immediately or, alternatively, no later than thirty business days before trial.

Mr. Giudice respectfully requests that the <u>Brady</u> material at issue be disclosed immediately, so that he may have it 'in time for its effective use at trial." <u>Id</u>. Given the breadth of the charges and the extensive number of non-indicted coconspirators, this Court should direct the prosecution to produce all <u>Giglio</u> and <u>Brady</u> materials immediately or, in the alternative, no later than 30 days before trial.

SUBPOINT B

THE COURT SHOULD ORDER THE IMMEDIATE
PRODUCTION OF BRADY IMPEACHMENT AND
GIGLIO/BAGLEY MATERIALS

A prosecutor's Brady obligations encompass information that

may be used to challenge a witness' credibility, i.e.,

"impeachment material."[3]  Specifically, in Napue v. Illinois, 360

U.S. 264 (1959), the United States Supreme Court held that a

prosecutor is obligated by the Due Process Clause to provide the

defendant with information related to a witness's credibility.

Id. at 269.  In explaining the basis for that obligation, the

Court reasoned that the "jury's estimate of the truthfulness and

reliability of a given witness may well be determinative of

guilt or innocence . . ." Id.  The Court's reasoning, of course,

was reiterated in and made the centerpiece of the decision in

Giglio v. United States, 405 U.S. 150 (1972), in which the Court

held that the defendant was entitled to a new trial because the

prosecutor had failed to disclose a promise of leniency to a

_____

[3] Although the full panoply of constitutionally-based obligations are
colloquially referred to as "Brady obligations," in reality, the United
States Supreme Court's in Brady v. Maryland, 373 U.S. 83 (1963), is most
noteworthy for clarifying that a prosecutor's good faith is not relevant when
determining whether his failure to disclose information violated due process.
The obligation to disclose impeachment material, announced in Napue v.
Illinois, 360 U.S. 264 (1959), was already a constitutional requirement at
the time Brady was decided.

prosecution witness. Id. at 154.[4] See also Youngblood, 547 U.S.
at 869 (noting that the government is required to disclose
evidence materially favorable to the accused, including both
impeachment and exculpatory evidence); Kyles, 514 U.S. at 433
(noting that in Bagley, the Court "disavowed any difference
between exculpatory and impeachment evidence for Brady
purposes"); Bagley, 473 U.S. at 676 (rejecting, for purposes of
an alleged Brady violation, "any . . . distinction between
impeachment evidence and exculpatory evidence"); United States
v. Edwards, 264 Fed. Appx. 139, 142 (3d Cir. 2008) (noting that
Giglio extended the Brady rule to include impeachment evidence
in addition to exculpatory evidence); Rivera v. Pennsylvania,
187 Fed. Appx. 240, 245 (3d Cir. 2006) (concluding that the
prosecutor must disclose evidence "favorable" to the accused and
that "favorable" evidence is that which is exculpatory or
impeaching); Lambert v. Blackwell, 387 F.3d 210, 252 (3d Cir.
2004) ("[I]mpeachment evidence, as well as exculpatory evidence,
falls within the Brady rule . . . because 'such evidence is
'evidence favorable to an accused.''") (quoting Bagley, 473 U.S.
at 676). Discussing and quoting Giglio, and honoring what had

---

[4] There is no question that Giglio is part of Brady's progeny. See, e.g.,
Giglio, 405 U.S. at 154 (tracing as obligations imposed on prosecutors by the
Due Process Clause of the Fifth and Fourteenth Amendments, as well as citing
and relying on Brady); United States v. Starusko, 729 F.2d 256, 260 (3d Cir.
1984) (relying on Giglio to explain the parameters of a prosecutor's Brady
obligations).

begun with Napue, the Bagley Court made clear that "when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within" the general obligation imposed by Brady and the Due Process Clause. Bagley, 473 U.S. at 677. Indeed, from a constitutional perspective, there is no distinction between exculpatory and impeachment evidence. United States v. Wecht, 484 F.3d 194, 207 n. 15 (3d Cir. 2007). See also Bagley, 473 U.S. at 676 (reversing the Court of Appeals when it "treated impeachment evidence as constitutionally different from exculpatory evidence"); Derrickson v. Del. County Dist. Attorney's Office, No. 04-1569, 2006 U.S. Dist. LEXIS 51476, at *28 (E.D. Pa. July 26, 2006) ("[T]he Supreme Court has broadened the scope of favorable evidence to include both exculpatory and impeachment evidence"), citing Bagley, 473 U.S. at 676). Impeachment material is, therefore, "within the purview of Brady."

If any person is to be a witness against Mr. Giudice, the extent of his or her involvement, as well as any other facts tending to impeach him or her, also must be disclosed to the defense under Giglio.

<u>SUBPOINT C</u>

THE COURT SHOULD INSTRUCT THE PROSECUTION
TO FULFILL ITS DISCOVERY OBLIGATIONS FORTHWITH

The prosecution has produced hours of unedited footage from "The Real Housewives of New Jersey" television show, but has yet to designate the specific recordings or portions thereof that it intends to offer at trial.  The Court should instruct the prosecution to do so immediately.  Once the prosecution fulfills its obligations, the Court should grant the defense an opportunity to file additional motions, including without limitation motions to conduct an audibility hearing under <u>United States v. Stark</u>, 515 F.2d 112 (3d Cir. 1975), and/or for relevance and undue prejudice, severance or other relief.

56

## POINT VII

THE GOVERNMENT SHOULD BE REQUIRED TO
DISCLOSE TO DEFENSE COUNSEL ALL DISCOVERY
PURSUANT TO RULE 3500 ("JENCKS ACT" MATERIAL)
OF THE FEDERAL RULES OF EVIDENCE AT LEAST
SEVENTY-FIVE DAYS PRIOR TO THE TIME THAT THE
GOVERNMENT EXPECTS THE WITNESS TO TESTIFY

The Jencks Act requires the Court, on a defendant's motion, to order the government to produce witness statements "[a]fter a witness called by the United States has testified under direct examination." 18 U.S.C. § 3500(a). The Third Circuit has stated that:

> [t]he blunt command of the statute together with the unequivocal legislative history has led to unbroken precedents in the Courts of Appeals denying to district courts the power to compel production of the statements of government witnesses until conclusion of direct examination at the trial.

United States v. Murphy, 569 F.2d 771, 773 (3d Cir. 1978).

Under established case law, the government is not required to provide Jencks materials until the conclusion of direct examination at trial. In general, however, the government recognizes the "salutary practice" of "delivering Jencks materials to defense counsel sufficiently in advance of the conclusion of direct examination to obviate trial interruptions." Murphy, 569 F.2d at 773 n. 5.

In this complicated case, early disclosure is necessary to

57

afford defense counsel an adequate opportunity to prepare for cross-examination without delaying the trial.  Providing these materials to the defense will not prejudice the government, and will aid Mr. Giudice and his counsel in preparing for trial in a thorough and competent manner.  It will also expedite the trial since cross-examination can be, to a large extent, prepared in advance of trial.

Accordingly, Mr. Giudice requests production of <u>Jencks</u> material if not immediately, at least 75 days prior to the particular witness's testimony.

POINT VIII

THE DEFENDANT SHOULD BE GIVEN
ACCESS TO THE GRAND JURY TRANSCRIPTS
IN ORDER TO DETERMINE WHETHER GRAND JURY
ABUSES LED TO THE INDICTMENT AGAINST HIM
AND FOR IMPEACHMENT OF WITNESSES' TESTIMONY

The grand jury is an instrument of the judicial process that has traditionally held a significant role as an instrument of justice.  The Fifth Amendment provides that:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .

The grand jury has the "dual function of determining if there is probable cause to believe that a crime has been committed and protecting citizens against unfounded criminal prosecutions," Branzburg v. Hayes, 408 U.S. 665, 686-87 (1972); U.S. v. Bernardo, 775 F.2d 238 (2d Cir. 1986) (the grand jury also serves as a protective function of securing persons against arbitrary or oppressive action).  It carries out this function as an autonomous body acting independently of the prosecuting attorney and the judge. United States v. Dionisio, 410 U.S. 1, 193 (1973).  In this regard, the integrity of the grand jury independence must be protected against improper intrusions by the government.  The United States Attorney in his role as

59

presenter may advise the grand jury as to the admissibility of the evidence and the proper procedures.  The United States Attorney may not, however, express his views on questions of fact, comment on the weight or sufficiency of the evidence, attempt in any way to influence or direct the grand jury in its findings, or give instructions with respect to questions of law.

Although the secrecy of grand jury transcripts must generally be maintained, Rule 6(e) of the Federal Rules of Criminal Procedure provides exceptions.  A grand jury transcript may be released to demonstrate a claim of impropriety on the part of the government and to support a "particularized need" demonstrated by the defendant that would outweigh the need for secrecy.

In this instance, the defendant must have access to the grand jury minutes to determine whether prosecutorial abuses led to the present indictment, and whether the government has valid ground to indict the defendant.  Also, as to whether among other things, the marital privilege has been violated in any way or respect.

The Superseding Indictment contains additional charges not alleged in the initial indictment.  This demonstrates that the initial grand jury may have voted to no bill these charges; accordingly, defendant should be permitted to inspect the

minutes to assure compliance with the law.

Additionally, there are presumably cooperating witnesses in the case at bar. The defendant has a particularized need to obtain the grand jury transcript of those persons in order to evaluate their credibility and to ensure the accuracy of their testimony.

It is therefore requested that the Court compel the government to provide Mr. Giudice with the grand jury testimony of all such witnesses. In the alternative, at the least, the Court should order the government to turn over all Grand Jury transcripts for an in camera review.

POINT IX

THE COURT SHOULD DIRECT THE
GOVERNMENT TO DISCLOSE (PUR-
SUANT TO RULE 16) ANY UNDISCLOSED
DISCOVERY OR CERTIFY THAT IT IS
IN FULL COMPLIANCE WITH RULE 16

In addition to the material expressly covered by Fed. R. Crim. P. 16, Mr. Giudice requests that the Court enter an Order requiring the government to produce the following:

1. Henthorn Request

Consistent with United States Department of Justice policy, the government must conduct a review of the personnel files of all agents expected to testify for any information favorable to the defense. See United States v. Henthorn, 931 F.2d 29, 30-31 (9th Cir. 1991). After review, if the government is uncertain about the materiality of information within its possession, it should submit the information to the court for an in camera inspection and evaluation. Id. at 31.

62

POINT X

THE GOVERNMENT SHOULD BE COMPELLED
TO PRESERVE ALL ROUGH NOTES, REPORT
DRAFTS, AND FINAL REPORTS PREPARED
BY ANY GOVERNMENT AGENT OR WITNESS
IN CONNECTION WITH THE INVESTIGATION
WHICH CULMINATED IN THE INDICTMENT
AGAINST THE DEFENDANT

Mr. Giudice requests that the Court order the government to preserve all rough notes and reports that were prepared by government agents or witnesses in connection with the investigation which culminated in the indictment against Mr. Giudice.

In United States v. Vella, 562 F.2d 275 (3rd Cir. 1977), the Court held the following:

> [T]he rough interview notes of F.B.I. agents
> should be kept and produced so that the
> trial court can determine whether the notes
> should be made available to appellant under
> the rule of Brady v. Maryland, 373 U.S. 83
> (1963). Id. at 275.

The government is under an obligation to preserve and set aside rough notes and drafts of reports. The failure, on the part of the government to preserve this evidence may in some instances constitute grounds for reversal. United States v. Testamark, 570 F.2d 1162, 1165 (3rd Cir. 1978).

It is therefore respectfully requested that the government

63

be instructed to preserve all rough notes, report drafts, and final reports that were prepared by government agents or witnesses in connection with the investigation which culminated in the indictment against Mr. Giudice.

POINT XI

THE COURT SHOULD ORDER THE PROSECUTION
TO PROVIDE IMMEDIATELY (OR AT LEAST
75 DAYS BEFORE TRIAL) THE GENERAL NATURE
OF ANY EVIDENCE OF OTHER CRIMES, WRONGS
OR ACTS THAT IT INTENDS TO INTRODUCE AT TRIAL
AGAINST DEFENDANT GIUSEPPE GIUDICE

Fed. R. Evid. 404(b) requires the prosecution to "provide reasonable notice in advance of trial . . . of the general nature of any . . . evidence it intends to introduce at trial" of "other crimes, wrongs, or acts . . . " Id. Given the breadth of the charges in this case, the Court should direct the prosecution to reveal all 404(b) materials immediately or, alternatively, no later than 75 days before trial. See United States v. Evangelista, 813 F.Supp. 294, 302 (D.N.J. 1993) (ordering the disclosure of 404(b) materials should be turned over before trial "[b]ecause the alleged incidents occurred more than five years ago" and "defendants' preparation to respond to the government's 404(b) material may require more effort than if the incidents had occurred more recently").

Additionally, the Court must direct the government to indicate which defendant any 404(b) material is offered against or if offered against both of them. Defendant requests a hearing on any 404(b) evidence proffered and reserves the right to argue Rule 403 also (that the prejudice exceeds the probative

65

value, as well as remoteness and relevance under Rule 401).

<u>POINT XII</u>

ALL CO-CONSPIRATOR STATEMENTS
MUST BE DISCLOSED AND THE COURT
SHOULD CONDUCT A <u>JAMES</u> HEARING TO
DETERMINE THEIR ADMISSIBILITY

Mr. Giudice respectfully submits that the complexity of the conspiracy charged entitles the defendants to a James[5] hearing. Accordingly, the prosecution should be directed to disclose all alleged coconspirator statements and should conduct a <u>James</u> hearing to determine their admissibility. <u>United States v. Gibbs</u>, 739 F.2d 838, 842 (3d Cir. 1984); <u>United States v. Ammar</u>, 174 F.2d 255 (3d Cir. 1983). It is unclear from the information provided by the government whether any statement made by any co-conspirators in this matter will be used pursuant to Fed. R. Evid. 801(d)(2)(e) – the federal coconspirator exception to the hearsay rule. In light of this, it is respectfully submitted that before any statements made by any persons can be used against Mr. Giudice, it must be determined at a hearing that such statements were in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2)(E) permits the introduction of "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." <u>Id</u>. To admit such statements,

---

[5] See generally <u>United States v. James</u>, 590 F.2d 575 (5th Cir.), <u>cert</u>. <u>denied</u>, 442 U.S. 917 (1979) (providing for a hearing outside the presence of the jury to determine by a preponderance of the evidence the existence of a predicate conspiracy).

the prosecution must prove by a preponderance of the evidence
"(1) that a conspiracy existed; (2) the declarant and the party
against whom the statement is offered were members of the
conspiracy; (3) the statement was made in the course of the
conspiracy; and (4) the statement was made in furtherance of the
conspiracy." United States v. McGlory, 968 F.2d 309, 333 (3d
Cir. 1992), cert. denied, 113 S.Ct. 415 (1993). "The strongly
preferred order of proof in determining the admissibility of an
alleged coconspirator statement is first to hold a 'James
hearing' . . . outside the presence of the jury to determine by
a preponderance of the evidence the existence of a conspiracy .
. . [because] if the court [instead] provisionally admits a
statement [before the jury] with the idea that the statement and
other evidence will later 'connect up' showing the existence of
a predicate conspiracy, there is the risk of undue prejudice if
in the end the evidence does not in fact 'connect up.'" United
States v. Urena, 27 F.3d 1487, 1491 (10th Cir. 1994) (citing
United States v. James, 590 F.2d 575 (5th Cir.), cert. denied, 99
S.Ct. 2836 (1979)). By "counsel[ing] that the practice of
admitting co-conspirator hearsay statements subject to later
connection 'be carefully considered and sparingly utilized by
the district courts,'" the Court of Appeals has adopted this
strong preference for James hearings. United States v. Gambino,

926 F.2d 1355, 1360 (3d Cir.), cert. denied, 111 S.Ct. 2800

(1991) (citing United States v. Continental Group, Inc., 603

F.2d 444, 457 (3d Cir. 1979), cert. denied, 100 S.Ct. 703

(1980)).

For the foregoing reasons, the prosecution should be

directed to disclose all alleged coconspirator statements and

should conduct a James hearing to determine their admissibility.

## POINT XIII

### THE DEFENDANT REQUESTS A HEARING TO DETERMINE THE AUDIBILITY AND ADMISSIBILITY OF ALL TAPE AND VIDEO RECORDINGS IN THE WITHIN CASE, INCLUDING ALL "REAL HOUSEWIVES OF NEW JERSEY" TAKES AND OUTTAKES

Mr. Giudice requests a hearing to determine the audibility and admissibility of all tape and video recordings (including recordings of the "Real Housewives of New Jersey" television show, including takes and outtakes).  In addition, the government must prove the chain of custody and authenticity of all evidence sought to be introduced.

It is well settled that "the burden is on the government to provide clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings. United States v. Starks, 515 F.2d 112, 121 (3d Cir. 1975); quoting United States v. Knoh, 379 F.2d 427, 440 (2d Cir. 1967) "and the better rule requires [the party offering the tape recording] to prove its chain of custody."

Under the law, before a tape or video recording will be admitted into evidence it is incumbent upon the government to establish a foundation showing the following facts:

> (1)  That the recording device was capable of taping the conversation now offered in evidence.

70

      (2)  That the operator of the device was competent to operate the device.

      (3)  That the recording is authentic and correct.

      (4)  That changes, additions, or deletions have not been made in the recording.

      (5)  That the recording has been preserved in a manner that is shown to the court.

      (6)  That the speakers are identified.

      (7)  Conversation elicited was not made due to inducement. <u>Starks</u>, at 1211 citing <u>United States v. McKeever</u>, 168 F.Supp. 426, 430 (S.D.N.Y. 1958).

In light of the foregoing, defendant Giuseppe Giudice requests a hearing to determine the admissibility and authenticity of the government's tape and video recordings (including takes and outtakes of the television program "Real Housewives of New Jersey" or other television or radio shows).

71

<u>POINT XIV</u>

THE GOVERNMENT MUST BE DIRECTED TO
DISCLOSE RELEVANT INFORMATION CONCERNING
ALL INFORMANTS AND WITNESSES

The Third Circuit has recognized that disclosure of an informant is required to ensure a fair trial when that informant plays an active and crucial role in the events underlying the defendant's criminal liability. <u>United States v. Jiles</u>, 658 F.2d 194, 196-97 (3d Cir. 1981). Certainly, if informants were involved in the investigation of this case, the informants have acquired the status of a material witnesses for the government. Consequently, Mr. Giudice is entitled to question the witness if he so chooses. <u>United States v. Tucker</u>, 552 F.2d 202, 209-10 (7th Cir. 1977). As such, fundamental fairness requires full disclosure of the informants' real names, addresses, and aliases. <u>Roviaro v. United States</u>, 33 U.S. 53, 60-61 (1957). The use of such information is critical for assessing a particular informant's credibility, and thereby critical to a determination of whether to call the informant to the stand.

It is also respectfully requested that the following information be disclosed regarding the informants or witnesses so that Mr. Giudice can appropriately prepare to cross-examine and test the credibility of the informant or witness: character evidence and evidence of other crimes, wrong or bad acts to show

72

motive or intent pursuant to Fed. R. Evid. 404(B); specific instances of conduct bearing on truthfulness pursuant to Fed. R. Evid. 608; prior inconsistent statements of the informants pursuant to Fed. R. Evid. 613; and information regarding drug or alcohol addiction of the informants. <u>United States v. Banks</u>, 520 F.2d 627, 632 n. 7 (7th Cir. 1975). In addition, information regarding mental illnesses of the informants or witnesses should be disclosed because such information is relevant to credibility and probative of the informants or witnesses' ability to comprehend, know, and correctly relate the truth, as well as information concerning government payments to the witnesses or informants. <u>United States v. Calvert</u>, 523 F.2d 895 (8th Cir. 1975); <u>United States v. Partin</u>, 493 F.2d 750 (5th Cir. 1974); <u>Fletcher v. United States</u>, 158 F.2d 321 (D.C. Cir. 1946).

Finally, the defense is entitled to know of any false statements made by an informant to the government. Any information regarding an informant's effort to deceive others for personal gain is crucial cross-examination material and must be provided to the defense, as is any information regarding any informant's or codefendant's plans to enter guilty pleas and/or cooperate with the government.

Mr. Giudice therefore respectfully submits that such information be provided forthwith.

## POINT XV

### THE GOVERNMENT MUST INDICATE EXACTLY WHAT PRIOR TESTIMONY GIVEN AT THE BANKRUPTCY PROCEEDINGS WILL BE USED AS IT PERTAINS TO A PARTICULR DEFENDANT OR BOTH

Mr. Giudice incorporates by reference the arguments and authorities in this brief, _supra_, and submits that the government must indicate exactly what prior testimony given at the bankruptcy proceedings will be used as it pertains to a particular defendant or both.

74

POINT XVI

DEFENDANT GIUSEPPE GIUDICE JOINS IN
THE MOTIONS OF CODEFENDANT TERESA GIUDICE
TO THE EXTENT THEY DO NOT CONFLICT

Mr. Giudice respectfully joins in the motions filed by his codefendant Teresa Giudice to the extent that they do not conflict with his own motions.

## POINT XVII

### DEFENDANT REQUESTS LEAVE TO FILE
### ADDITIONAL MOTIONS AS THEY BECOME
### APPROPRIATE

Mr. Giudice reserves the right to file additional motions not currently contemplated that may arise due to discovery not yet provided or other arising legal issues.

<u>CONCLUSION</u>

For the foregoing reason and authorities cited, the
defendant Giuseppe Giudice respectfully requests that the Court
order the government to grant his pre-trial motions in their
entirety.  In addition, this Court should grant such other
further relief as the Court deems just and appropriate.

                              Respectfully submitted,
                              MILES FEINSTEIN, ESQ.
                              1135 Clifton Avenue
                              Clifton, New Jersey 07013
                              TEL: (973) 779-1124
                              FAX: (973) 779-9883

                              Attorney for Defendant
                              Giuseppe Giudice

                              By: */s/ Miles Feinstein*
                                  <u>MrFeinsteinEsq@aol.com</u>

                                  */s/ John Vincent Saykanic*
                                  <u>JohnVincentEsq@aol.com</u>


Dated: January 15, 2014

77

<u>CERTIFICATION OF SERVICE</u>

I, the undersigned attorney hereby certify that on this day a copy of this brief was served via electronic filing and a courtesy copy was served via regular mail to:

Hon. Esther Salas, U.S.D.J.
M.L. King, Jr. Federal
Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Jonathan W. Romankow, Assistant
United States Attorney
United States Attorney's Office
970 Broad Street, Room 700
Newark, New Jersey 07102

Henry E. Klingeman, Esq.
60 Park Place; Suite 1100
Newark, New Jersey 07102

I certify that under penalty of perjury that the foregoing is true and correct.

MILES FEINSTEIN, ESQ.
Attorney for Defendant
Giuseppe Giudice
/s/ Miles Feinstein
MILES FEINSTEIN, ESQ.

Dated: January 15, 2014

78